## Case No. 9,110.

### MARSH et al. v. BENNETT et al.

[5 McLean, 117.] [1]

Circuit Court, D. Michigan. June Term, 1850.

PARTNERSHIP—PROVISION FOR CREDITORS ON DISSOLUTION — PURCHASING PARTNER — TRUSTEE FOR CREDITORS — ASSIGNMENT — HINDER AND DELAY.

1. By the dissolution of a partnership, provision being made in the articles of dissolution for the payment, equally, of all the creditors of the firm, by the partner who purchases the interest of the retiring partner, and continues the business, such partner is a trustee for the creditors of the firm; and a subsequent assignment, by such partner, of the partnership effects, preferring certain creditors to others, and contrary to the stipulation in the articles of dissolution, is fraudulent and void.

[Cited in Darby v. Gilligan, 33 W. Va. 249, 10 S. E. 401.]

2. A provisional stipulation in a deed of assignment, coercing the creditors of a partnership "to delay their suits" against the firm, or else forfeit their claims upon the fund assigned, is fraudulent.

3. Such stipulation hinders the lawful process to which the creditors are entitled, tends to delay, and jeopards the right of creditors.

4. The notice required by the 5th section of the act of congress, of March, 1793 [1 Stat. 334], of an application for an injunction, may be waived by an appearance.

[This was a suit by Marsh and Compton against Bennett, Gilbert, and others. Heard on motion to dissolve an injunction.]

Romeyn & Wilson, for complainants.
Walker & Campbell, for defendants.

WILKINS, District Judge. Motion of Mr. Romeyn, of counsel for defendant Hill, to dissolve injunction heretofore allowed in this case, founded on the bill of complaint, and the allowance of the injunction by the court, without notice, according to the indorsement on the bill, and the records, files and entries in the case, and on the answer filed by the said defendant, George W. Hill.

The bill was filed on the 7th day of July, 1846, and the injunction allowed on the same day. There does not appear to have been any notice given to the defendants, or either of them, according to the provisions of the 5th section of the act of congress, of the 2nd of March, 1793, which provides that the writ of injunction "shall not be granted in any case, without reasonable previous notice to the adverse party, or his attorney, of the time and place of moving the same." And the 55th rule of practice for the courts of equity of the United States, incorporating this provision of the statute, enjoins due notice on the adverse party, prior to granting any special injunction. There is no proof of notice on the files, and no proof exhibited now that notice was ever given. The injunction, therefore, would now be dissolved, had not all the parties waived the proof of such

notice by their voluntary appearance. The provision of the statute being designed for the benefit of defendants, the proof of the notice required by the statute may be waived either before or after injunction issued; and regular reasonable notice will be presumed after an appearance.

This defendant, George D. Hill, by his solicitors, Miles and Wilson, entered his appearance on the 29th of July, 1846; and the other defendants, Henry D. Bennett and George N. Gilbert, likewise voluntarily entered their appearance, by O. Hawkins, their solicitor, on the 14th day of July, 1846. On the 31st of August following, this defendant, Hill, filed his first separate answer to the bill of complaint, and on the 20th of October, 1846, his second separate answer. The other defendants never have answered.

These several acts upon the part of the defendant Hill, and the appearance of the other defendants, supply the want of proof of the reasonable notice required by the statute for the protection of the rights of defendants.

But the defendant Hill, in order to sustain this motion, further relies upon the equities exhibited in his answer, which chiefly sets forth an assignment to him, by Henry D. Bennett, on the 19th day of January, 1846, of all the goods, chattels, book accounts, claims and demands, and personal estate of every kind, of the late firm of Bennett & Ford, then (by the previous dissolution of the said firm) the property of the said Bennett, for the purpose expressed in the transfer to him, and including therein a note of the defendant, George W. Gilbert, for $3125, with interest from the 15th of January, 1846. This assignment to Hill is on certain conditions, and for certain uses and purposes, and upon certain trusts therein expressed. The assignor first provides for the payment of certain domestic creditors, in the order in which they are named in the first class, absolutely, and to the whole amount of their respective claims. And after the full payment of these creditors, provision is then made for the pro rata distribution, among the foreign creditors of the firm of B. & F., from the residue of the fund assigned; providing and expressly declaring, that the assignee or trustee "shall first appropriate all the proceeds of the trust to the payment, in the order previously prescribed and set forth, of all the creditors therein provided for, who shall not, at the time of making any payment or dividend, have made, by themselves or attorneys, any costs or expenses upon their claims; and that the claim or claims of any creditor or creditors of the said firm, who shall, at the time of making any payment or dividend, have made or occasioned any cost or expense upon their claims, by any resort to any proceeding having a tendency to interfere in any manner with, or prevent or obstruct the easy and economical execution of the trust, shall be postponed, and no payment whatever thereafter be made there-

upon, until all the other creditors shall have been paid in full; after which, the remaining proceeds shall be first applied towards the payment, pro rata, of all such claims upon which costs have been made, in proportion to the present amount of said claims, exclusive of costs, so far as the same may be sufficient or necessary to satisfy such claims."

The answers disclose the material facts of the case.

On the first day of January, 1846, the firm of Bennett & Ford, being largely indebted to certain New York merchants, for merchandise purchased during the previous summer and fall, and also indebted to certain persons residing in their vicinage, dissolved their co-partnership; Ford, the retiring partner, on the same day, assigning and selling to Bennett all his interest in the stock of goods, books of account, &c., the property of the said co-partnership, "for the purpose of paying off" the creditors of the said firm, and closing the concern. On the 15th of the same month, the said Bennett sold and delivered to George W. Gilbert the stock of merchandise in the store lately owned by the said co-partners, for the sum of $3125, and took his note of the same date for that sum, payable in one year. On the 19th of January, but a few days after the dissolution of the partnership, and the sale to Gilbert (all within three weeks), Bennett makes the assignment to the defendant Hill, as set forth in his answer, with the preferences, and limitations, and trusts, therein contained.

No period is fixed in the assignment, when the trust is to be closed. It comprehends the co-partnership estate of the firm of B. & F., viz., "the claims, demands, and personal estate of every kind, which recently were the property of said co-partners, and then the property of said Bennett." The assignor Bennett, divides the creditors of Bennett & Ford into two classes, and designates a preference for the first class in payment. Annexed to the assignment, and forming a part of the same, is the schedule of property assigned, estimated by the assignor at $4749 19, inclusive of Gilbert's note for $3125, given expressly for the stock of goods, which had been, "during the previous summer and fall," purchased on credit by B. & F., from the foreign creditors, composing the second class. The first class of creditors are those who reside in Ann Arbor and its vicinity, and are directed to be paid first, the full amount of their claims, in the order in which they are named. Their claims are stated at $849 19; which amount, with the claims of the other creditors, not enumerated by name, but designated generally, as "residing in the neighboring towns," together with the expenses of the trust, will, at a reasonable estimate, bring the first payment to at least $1200; leaving, for pro rata distribution among the second class of creditors, (chiefly—yea, with one exception—merchants residing in the city

of New York, who had, "the previous summer and fall," furnished the firm of B. & F. with their stock of goods, on credit,) the sum of $3549 19.

The amount stated to be due, in schedule 3, to these foreign creditors, is $6205 84; to meet which, the above balance of $3549 19, (if it ever could reach even that amount,) was designed for pro rata distribution; but, with the express provision, by the assignor, Bennett, that if any of this last list of creditors should commence, or have commenced, any legal proceedings for the recovery of their claims, such creditors should be postponed from any payment out of the trust fund, until all the other creditors, domestic and foreign, should have been paid in full; which, from the character of the assignment, and the amount appropriated for distribution, would of course be forever; or, in other language, such of the creditors who might bring suit, unless they all did so in second class, are excluded from the fund.

This assignment is, on its face, in law, fraudulent and void, as against the statute of frauds, being made with intent to delay, hinder or defraud creditors of their just and legal actions. Because,—

1st. By the transfer of his interest in the store, by Ford, to Bennett, it is expressly declared for the purpose "of paying off" the creditors of B. & F., without designating any preference between such creditors. By this transfer and assignment, Bennett became the trustee of all the creditors of B. & F., and had no authority to create another trust in the same effects, contrary to the provisions of the first trust, and therein prefer in payment one class of creditors to another class. Bennett was bound, in closing the concern of B. &. F., according to the trust conferred upon him by his retiring partner, "to pay off the creditors," without discrimination or preference; which, if the funds were insufficient to pay all, would of course demand a pro rata distribution amongst all. He had no right to prefer any of the creditors of B. & F., because, however B. & F. might have originally preferred one class of their creditors to another, yet, the terms of the dissolution, as set forth, and the original transfer to Bennett, by Ford, of the effects of B. & F., conferred no such power upon Bennett. The previous summer and fall, this firm (by the defendant's own showing) obtained credit for merchandise in New York, for better than $8000. They pass out of their hands, in the short time of a few months, on or before the 15th of January following, better than $5000 of this property, and then assign the remainder, by the act of Bennett alone, to a trustee of Bennett—not to pay all the creditors a fair proportion of their respective claims, so recently incurred to the foreign creditors, but absolutely devoting the means of these very foreign creditors—First, to pay other creditors residing on the spot, and then, to distribute among these foreign creditors the remnant, under the threatened penalty of losing all, should they

seek a lawful remedy to recover a part of their own. The retiring partner conferred no such authority upon Bennett; and under the sale and transfer to Bennett, for the purposes indicated, he was clearly the trustee of all the creditors of B. & F., without the power of discrimination, and could not subsequently violate the original agreement with Ford.

2d. The creditors of B. & F. had a just right to legal process, at law or in equity, in order to reach either the effects of the co-partnership, or, the individual effects of either of the partners. The provisional stipulation in the assignment of Bennett to Hill, coercing the creditors to "delay their lawful suits" against the firm of B. & F., and so jeopard their claims, is therefore invalid, and a fraud upon the creditors. It "hinders" such lawful process; and, from the character of the assignment, and the powers conferred upon the assignee, as to time, would so tend to delay, as to carry beyond the statute of limitations such claims and demands. Partners contemplating bankruptcy could thus evade the salutary restraint of the statute of frauds, might make individual investments out of the partnership funds and partnership credit, and thus compel creditors to avoid and delay suit, until it would be too late by legal process to search out such hidden investments. The stipulation in the assignment to Hill, postponing those creditors who bring suit, until all the rest are paid, thus "hinders and delays" them, and is calculated to defraud them "of their lawful suit," as against the firm of B. & F., to reach the partnership effects, and also the individual effects of each of the partners. To reach either Ford's estate, or Bennett's estate, as the debt was joint, the judgment must be against both, and the prohibition to sue is general, as to the firm of B. & F. The stipulation is two-fold. 1st. Prohibiting payment to any litigant creditor, until all the others are fully paid; and, 2dly. In paying them, if ever,—confirming such payment to the "present" existing claim, exclusive of costs. By this, the debtor defines who shall be considered as his creditor, and closes all objection on the part of any one, as to the amount of the claim; for, should the matter be contested by any creditor enumerated in the schedules, or not, the sole arbiter is the debtor himself; for, if the disputant resorts to his "lawful suit" to ascertain his right, his whole claim is perilled, and by the amount of the fund appropriated, excluded from payment. This certainly tends "to hinder, and delay, and defraud."

The statute of this state, following the provisions of 13 Eliz. c. 5, declares every assignment or conveyance made with intent to hinder, delay or defraud creditors or other persons of their lawful suits, damages, forfeitures, or demands, as against the persons so hindered, delayed, or defrauded, shall be void.

As exhibited in the bill, the complainants recovered judgment in the court of U. S. for this district, at the last June term, against B. & F., for $1020 77, and $41 92 costs. They are placed in the 3d list, seventh in order, at $993 25. Having brought suit, then, the terms and provisions of the trust, postpones the complainants from any participation in the fund assigned, until every other creditor, domestic and foreign, who has not sued, is fully paid. This cannot be sanctioned. Nor can its features be well assimilated to those cases of assignments by debtors in failing circumstances, in which (after surrendering all their property for the benefit of all their creditors, placing them all upon one common footing, without predilection or prejudice to any one creditor) they require the execution of a release by their creditors in their favor, and excluding those who do not execute such release from any participation in the trust fund. In such cases, the clause stipulating a release, is not a condition imposed upon the estate, but a mere designation of preference of those creditors who are to enjoy it, and for whom the trust is created. A debtor may prefer one class of creditors to another, and such a measure would be neither illegal nor immoral, per se: for, as is observed by Chief Justice Marshall in Brashear v. West [7 Pet. (32 U. S.) 608], "the right to make such an assignment results from the absolute ownership which every man claims over that which is his own." Whether creditors would come in under such a clause of release depends upon themselves, and not upon the debtor creating the trust. But, in the case under consideration, the trusts of the deed are, that the trustee should convert the assigned effects into money, or, that which would answer the creditors as money, —pay in full the 1st class of creditors designated, and distribute the residue pro rata among the 2d class of creditors, postponing such creditors who should bring their lawful suits, for the recovery of their claims, until all those in the 1st and 2d class, who had refrained from suit, were fully paid the whole amount of their claims. The 2d class, with or without suit, are postponed for an indefinite period, contingent on the full payment of the 1st class; an event altogether uncertain, thereby "sheltering from the claims of creditors" the estate of the debtor, in the language of Mr. Justice Washington, in Pearpoint v. Graham [Case No. 10,877], and "in the meantime the estate to be enjoyed by a mere volunteer, not the choice of the creditors." This is providing "for a future preference," contingent upon a future event, not under the control of the debtor or the trustee, namely, the solvency at the end of one year, of one of the principal debtors of the estate, whose indebtedness composes the chief portion of the assets, out of which the creditors of B. & F., are to be paid. By such a provision thus controlling the trust, the debtor, in fact, coerces his creditors to refrain and desist from their legal right to bring suit for the recovery of their claims against him; and what other intent could the debtor entertain, in thus contingently postponing one set of creditors to another,

(and, in fact, excluding them) than "to hinder and delay them in their lawful suits." He who is but a trustee of their property, virtually declares by such a provision, that they shall not have the remnant of their own, unless they shall refrain and delay from suit. The debtor thus enacts a law for his creditors, and withdraws his effects from their executions and the reach of the common law, in order to compel his creditors, under the apprehension of losing all their claims, to comply with a law of his own enactment. Without such a provision controlling the trust, any creditor suing subsequent to the assignment, would only be entitled to a ratable proportion of his claim existing at the date of the assignment, independent of costs of suit, such costs forming no part of the claims provided for; and, as to suits instituted prior to the assignment, such a provision would clearly be invalid, as calculated and designed expressly to hinder and delay,—for, if valid, such suits must at once be discontinued, and costs paid, in order to entitle the creditor to distribution. What other design, therefore, could prompt the debtor, in thus clogging the trust, than reserving an ultimate benefit to himself in the prevention of suits by his creditors? And what other intention can be gathered, than that of "hindering them" in the prosecution of their claims? No such provision was necessary to protect the fund from being wasted in litigation, and a debtor overwhelmed with debt, and with effects remaining confessedly insufficient to meet more than one third of his engagements, professedly assigning all for the benefit of his creditors, but also expressly excluding all who bring suit or have brought suit, from any benefit in the trust, can have no other object in view, than to defraud some one or more of his creditors, who have either already brought, or, to his knowledge, have contemplated bringing suit.

Such an assignment, by thus confining the distribution of the proceeds of the trust, to such of the creditors as should refrain from their lawful suits. in order to reach either partnership or individual effects, and making the payment of one class depend upon a contingency in future. uncertain as to occurrence and as to time, is a species of unfair coercion, prescribing unreasonable and illegal terms, upon creditors, thereby delaying and hindering them in their lawful suits, and, therefore, fraudulent and void as to such creditors.

In Brashear v. West [7 Pet. (32 U. S.) 608], which was a case, where the indenture contained a clause of release as a provision entitling creditors to come in, Mr. Chief Justice Marshall remarks as follows: "If this release were voluntary, it would be unexceptionable. But it is induced by the necessity arising from the certainty of being postponed to all those creditors who shall accept the terms by giving the release. It is not therefore voluntary. . . . . The objection is certainly powerful, that its tendency is to delay creditors. . . . . The weight of this argument is felt. . . . . We are far from being satisfied, that, upon general principles, such a deed ought to be sustained."

If an involuntary release, or, rather a compulsory release be exceptionable, and tends to delay and hinder creditors of their lawful suits, much more exceptionable, certainly, is a provision absolutely prohibiting suit, under the peril of losing the whole claim. If the one tends to delay, surely the other does. In the one case, within a specified period, a release must be executed; in the other, the last must wait the uncertain contingency of the payment of the first in full, and if suit be brought, and that fact is made apparent to the trustee at the time of a declaration of a dividend out of the remnant of the trust funds,. the litigant creditor is further postponed until all the non-litigants are fully paid. If the objection be of "intrinsic weight" in the one case, it loses no force when applied to the other. In the one case, there is a present preference, and, in the other, in the language of Senator Tracy, in Grove & Wakeman, "there is a preference on a future contingency." In this case of Brashear v. West, the venerated and beloved chief justice expressly places the decision of the supreme court of the United States on the ground, that the court follows the construction of a local law of the state of Pennsylvania, and that the construction which the courts of that state had put on their own statute of frauds, must be received in the courts of the United States. The argument and expressed opinion of the chief justice on the point considered, is adverse to the decision pronounced.

The statute of Michigan has as yet received no judicial construction in this state, the case of Fox v. Clarke [1 Mich. 321] not applying to the point raised in this case, so that the question here is entirely new.

In Halsey v. Fairbanks [Case No. 5,964], which was also a case where the debtor stipulated for release, the learned Justice Story observes: "The question never can be whether a remedy exists for the creditors, but, whether the debtor has not endeavored fraudulently to delay or defeat them. Where the debtor stipulates for a release, he surrenders nothing except upon his own terms. He attempts to coerce his creditors, by withholding from them all his property. unless they are willing to take what he pleases to give. This is certainly a delay, and if the assignment be valid, to some extent a defeating of their rights. Has it not a tendency to obstruct the common rights of the creditors? The question is, whether the intent apparent upon the deed itself, be not to coerce them to a settlement, by embarrassing or delaying their remedy. Such an intent is of itself illegal."

And after reciting and commenting on several decisions in Massachusetts, Pennsylvania. and New York. this profound jurist and honest judge further observes: "The weight of authority is then in favor of the stipula-

tion of release," and, "I am free to say that, if the question were entirely new, and many estates had not passed upon the faith of such assignment, the strong inclination of my mind would be against the validity of them. As it is, I yield without reluctance, to what seems the tone of authority in favor of them."

In this state, as has been already observed, the question is still open, both as regards an assignment containing a provision postponing the litigant creditor to others, and the validity of such a stipulation of release; the objection alluded to by Justice Story does not exist here, and his reasoning, therefore, in favor of sustaining the clause of release, instead of supporting the peculiar trust in this case, is conclusive against validity. What is the intent apparent upon the deed itself? Is it not to coerce the creditors to a settlement on the debtor's own terms, by embarrassing and delaying their remedy? In the simple interpretation of the language employed in the trust, is it any more or less than this: a surrender of all the property of the co-partnership, for the ostensible benefit of all the creditors, but, at the same time locking it up, from all such as shall bring suit, and without suit making the partial payment of the great body of the creditors dependent upon a distant and an uncertain contingency. Is not this exacting a stipulation in favor of himself and his co-partner, protecting their future acquisitions from future suits, by shielding them until the lapse of time would bar the claims of their creditors? Does not such a provision, if held valid, defeat their rights, unless they are willing to take what the debtor pleases—await the contingency of the trust, and delay and refrain from bringing suit?

In Austin v. Bell [20 Johns. 442], the supreme court of New York held: "That a deed which does not fairly devote all the property, but reserves a favor to the assigning debtor, unless the creditors shall assent to his terms, is void, as against the statute of frauds."

It is not, it would seem, the reservation of a portion to himself, that alone constitutes the fraud, although it constitutes a prominent badge of fraud; but, the prescription of the terms by the creditor, showing the intent to hinder and delay. But in this case, Judge Spencer approbates the decision of Hyslop v. Clarke [14 Johns. 458], which was an assignment of all the property, without such reservation, but with a stipulation of release; and in Seaving v. Brinkerhoff [5 Johns. Ch. 329], Chancellor Kent held: "That such an assignment with such a stipulation of release was, on that account, fraudulent and void." If a stipulation reserving a portion of the estate to himself is a badge of fraud, as connected with the prescription of terms upon the creditors, compelling their assent, certainly a stipulation which protects his future acquisitions from suit, is obnoxious to a like objection. In the one case, he locks up a portion of what he now has. In the other, he locks up all that he may ever acquire, from the just demands of his creditors.

In the case of Grover v. Wakeman [11 Wend. 187, Judge Sutherland, in a very elaborate, learned, and conclusive opinion, in which he reviews all the preceding cases in New York, Pennsylvania, and Massachusetts, pronounces the decision of the court of errors of New York, that such assignments, containing a provision of release by creditors, in order to entitle them to share in the assigned property, are void. Mr. Justice Sutherland's opinion is rightly considered the opinion of the court, as the resolution declaring the assignment void, incorporating the decision of, and adopted by the court, was proposed by him, after solemn consideration, and his views sustained by Judges Nelson and Savage, who, with him, then composed the supreme court of New York, as also by Senator Tracy, in a most lucid exposition of the whole doctrine.

In the case of Ingraham v. Wheeler [6 Conn. 277], the supreme court of Connecticut pronounced such a stipulation fraudulent and void, mainly on the principle that it confined the distribution of the property to the releasing creditors. The same principle was also decided in Ohio.

From a review of all these cases, and the careful consideration of the character and object of the assignment of Bennett, of the effects of Bennett & Ford, to the defendant Hill, exhibited in his answer of the 20th October, 1846, I cannot arrive at any other conclusion, but that the assignment was made with the intent to hinder, and delay, and defraud creditors of their lawful suits, and especially Marsh & Compton, the complainants, and is therefore void.

Motion refused.