## A. G. Sage *vs.* Chollar and others.

Partnership property is regarded, in equity, as a sort of trust fund appropriated for the purpose of paying partnership debts.

But, upon a voluntary dissolution, one partner may agree that the partnership property shall belong to his copartner. Where such an agreement is made in good faith, the property will be held by the partner to whom it has been transferred, free from any lien or equity in favor of partnership creditors.

If the partner taking the transfer has agreed to pay the partnership debts, the partner making the transfer, though he still remain liable for those debts, can only look to the personal security of his copartner for indemnity.

The property so vested in the assignee can only be reached by creditors, partnership as well as individual, through the instrumentality of a judgment and execution.

Where two members of a firm have sold and transferred their interest in the copartnership to the third, upon his assuming the payment of all the debts of the firm, an action cannot be maintained against the latter, by a simple contract creditor of the firm, upon the ground that, since the transfer to him, the defendant has confessed, and suffered judgments to be recovered against him, for his own individual debts, upon which judgments the partnership property has been sold for a sum far below its value, and that the judgments were confessed and entered, and the proceedings thereon had in bad faith, and for the purpose of defrauding the plaintiff and the other creditors of the firm.

MOTION to dissolve injunction. The defendants Chollar, Sage and Dunham, in March, 1854, and prior thereto, were partners in the foundry business, at West Troy. In May, 1853, the firm made and delivered to Benjamin H. Sage, one of the partners, their two notes, one for five thousand dollars, the other for one thousand dollars. These notes were transferred to the plaintiff, who at the time of the commencement of this suit was the holder thereof. In March, 1854, Benjamin H. Sage sold and transferred his interest in the copartnership to the defendant Dunham, and in June following, Dunham sold and transferred the whole of his interest to the defendant Chollar, he assuming to pay all the debts of the firm. From June, 1854, to January, 1855, the business was carried on by Chollar alone. On the 9th of January, 1855, a judgment was recovered against Chollar, in favor of the defendant, Martha Cooley, for $2070.33, an action commenced by summons and complaint, and without defense. On the 11th of January, 1855, a judg-

ment was entered up by confession against the defendant Chollar, in favor of Maria Warner, for $331.82 ; another judgment in favor of Harvey Clark, for $336.54 ; another in favor of James Buel, for $3819.54, and another in favor of Lorenzo D. Lawrence, for $304.82.  Upon all these judgments executions were issued to the sheriff of the city and county of Albany, upon the same day they were recovered.  On the 13th of January the defendant executed a general assignment of all his property to George T. Blair, for the benefit of his creditors.  On the 15th of January a large amount of property, including that which had formerly been the property of the firm of Chollar, Sage and Dunham, was sold by the defendant Houghtaling, the deputy of the sheriff of Albany, to whom the execution in favor of Martha Cooley had been delivered.  The property sold, according to the affidavits read upon the motion, was worth many thousand dollars, and was sold for a few hundred dollars.  The defendants, Volney Richmond and John T. Piercy, were the sole purchasers.  The property not sold under the Cooley execution . was advertised to be sold under the other executions on the 24th of January.

The plaintiff, after stating the above facts in his complaint, alleged that the judgments above mentioned were for individual debts of the defendant Chollar, and that, as well at the time of his purchasing the interest of his copartners, as at the time of the confession and entry of the judgments, the firm of Chollar, Sage & Dunham, and each of the members of that firm, were insolvent.  It was also charged that the judgments were confessed and entered, and that the proceedings thereon were had in bad faith, and for the purpose of defrauding the plaintiff and the other creditors of the firm.  The insolvency of the firm, at the time the defendant Chollar became the purchaser of the interest of his copartners, was denied in the answer of Chollar, and the plaintiff produced no further evidence in support of the allegation.

Upon the complaint, verified by the affidavit of the plaintiff, an injunction was allowed, as prayed for, restraining the defendants from receiving, intermeddling with, incumbering or

disposing of, the property, or any part thereof, which belonged to the firm of Chollar, Sage & Dunham, until the further order of the court. The several defendants, having appeared and put in their answers, moved, upon such answers and affidavits, to dissolve the injunction. On the part of the plaintiff, affidavits were produced tending to show that the sale by the sheriff, by virtue of the execution issued upon the Cooley judgment, and the purchase of the property sold by Richmond and Piercy, were collusive and fraudulent.

*J. H. Reynolds* and *J. Romeyn,* for the plaintiff.

*W. A. Beach,* for the defendants.

*By the Court,* HARRIS, J. Partnership property is regarded, in equity, as a sort of trust fund appropriated for the purpose of paying partnership debts. "There is," says Story, "properly speaking, as between the partners, a lien, or at least an equity, which may be worked out through the partners, in favor of the creditors, although it may not directly attach in the creditors by virtue of their original claims." (*Story on Partnership,* § 97.) "The equity," says Lord Eldon, " is not that of the joint creditors, but that of the partners with regard to each other, that operates to the payment of the partnership debts." (*Ex parte Ruffin,* 6 *Ves.* 119, *cited by Story as above. See also Story on Partnership,* § 326.) This lien or equity, being that of the partners, and not of the partnership creditors, it follows, that it may be discharged by the partner. Upon a voluntary dissolution, one partner may agree that the partnership property shall belong to his copartner. Where such an agreement is made in good faith, the property will be held by the partner to whom it has been transferred, free from any lien or equity in favor of partnership creditors. If the partner taking the transfer has agreed to pay the partnership debts, the partner making the transfer, though he still remain liable for those debts, can only look to the personal security of his copartner for indemnity. (*Story on Partnership,* §§ 358, 359. *Ketchum*

Sage *v.* Chollar.

v. *Durkee,* 1 *Barb. Ch.* 480. *Kirby* v. *Schoonmaker,* 3 *Barb. Ch.* 46.) In this case, the transfer by the partner Sage, to Dunham, of his interest in the partnership property, and the subsequent transfer of the whole by Dunham to Chollar, vested the whole property in the latter. By these transfers, both Sage and Dunham relinquished the lien which they might have had on the property for the discharge of their liabilities, and agreed to look only to the personal responsibility of Chollar for the payment of the debts. The property so vested in Chollar could only be reached by creditors, partnership as well as individual, through the instrumentality of a judgment and execution. I assume that the transfers which had the effect to vest the partnership property in Chollar were made in good faith. There is nothing in the case to impeach their integrity.

If I have not erred in the application of the appropriate principles of equity to the case in hand, it follows that the plaintiff has entirely misconceived the relief to which he is entitled. That the judgments, upon which a large portion of the property which ought to have been applied to the satisfaction of partnership debts has been swept away, is fraudulent, there is much reason, from the facts as they now appear, to believe. That the sheriff's sale which has resulted in the transfer of so much of the property which ought to have been devoted to the payment of debts, to the defendants Richmond and Piercy, for an insignificant price, was collusive and fraudulent, there is very little room to doubt. But these frauds, if frauds they are, can only be reached in an action by a judgment creditor, or, at any rate, upon some proceeding instituted upon a theory entirely different from that which the plaintiff presents in this complaint. The motion to dissolve the injunction must be granted, but, under the circumstances, I am not inclined to charge the plaintiff with the costs of the motion.

[RENSSELAER SPECIAL TERM, June 11, 1855. *Harris,* Justice.]