SCHLEICHER, SCHUMM & CO., PLAINTIFFS IN ERROR,
VS. JOHN T. WALKER, DEFENDANT IN ERROR.

1. Partnership creditors have not as such, any lien on partnership assets.

2. The equity of partnership creditors to have partnership assets applied to partnership debts as against claims of creditors of any one member of the firm is dependent entirely upon the lien or equity of the other member or members of the firm to have such application.

3. One partner may upon a voluntary dissolution of a firm sell to his copartner all his interest in the partnership concern, and if he do so *bona fide* before any lien has been acquired thereon by partnership creditors through an execution, an attachment or otherwise, the transfer will, if such be the intention of the partners, vest in the purchasing partner divested of the equity of the selling partner to have the partnership assets applied to partnership debts.

4. A stipulation or covenant by the purchasing partner to pay the firm debts is not fatal to the good faith of a transfer of the other partner's interest in the partnership concerns, nor to the divestiture of the joint ownership or partnership character of the property ; but to the contrary, such a covenant may be the sole consideration of the transfer.

5. Where one partner transfers his entire interest in the partnership concerns to his copartner so as to vest in the latter the partnership assets as his sole property, a dissolution of the partnership results..

6. The purchasing partner may as against any simple creditor of the partnership assign for the payment of his individual debts the partnership property vested in him as his sole property by a

transfer from his partner. It seems that he may exercise the same dominion over it which he can over any other individual property.

7. The fact that partners were insolvent six weeks or more after a transfer by one of them of his entire interest in the partnership concerns to the other does not establish their insolvence as of the time of such transfer nor avoid a transfer as a fraud upon partnership creditors.

8. Where the questions of the good faith of a sale by one partner to another and of an assignment by the latter to pay his creditors and of the intent to hinder and defraud creditors, and of whether such sale was made in contemplation of insolvency have been fairly submitted to a jury, its finding will not be disturbed by an appellate court unless the testimony justifies it at least clearly.

Writ of Error to the Circuit Court for Duval county.

## STATEMENT.

The facts of this case are as follows:

On March 7th, 1884, William H. and Clarence H. Ashmead, being partners under the firm name of Ashmead Bros., at Jacksonville, the latter executed to the former a bill of sale whereby "for and in consideration of the sum of six thousand dollars, lawful money of the United States, to me paid by Wiiliam H. Ashmead, * * the receipt whereof is hereby acknowl-edged," Clarence bargained, sold and conveyed to William all his, Clarence's, interests in the assets of Ashmead Bros. On the 24th day of the same month William H. executed a written instrument whereby he

assigned and transferred to John T. Walker all moneys that he, William, "may be entitled to have from insurance effects from Ashmead Bros. on property of all kinds which was lost by fire in the building on Bay street, * * * destroyed by fire on the night of the 23rd instant, in trust, however, that he shall collect the said money and at once distribute the same pro rata without any discrimination or preference among all my creditors." It constitutes * * Walker his attorney in fact to demand, sue for and receive all said moneys for the purpose aforesaid, and in his, William's, name and stead, or in that of Ashmead Bros., of whom William is "the successor by purchase and assignment," to execute all proper receipts and releases. On the 27th of the month the plaintiffs sued William and Clarence, doing business as Ashmead Brothers, in an action of assumpsit, and on the 29th procured a writ of garnishment, which was served the same day on one Foster, an agent of the North British and Mercantile Insurance Company. The plaintiffs' action was brought to recover on two promissory notes dated January 22nd, 1884, each for the sum of $200 principal, and maturing, one thirty, and the other sixty days after date. To this action defendants appeared on April 7th, the day the declaration was filed.

On April 24th William H. and Clarence, partners under the firm name aforesaid, parties of the first part, executed a deed to Whitfield Walker, reciting that they were indebted to divers persons in sundry sums

of money which they were unable to pay in full, and granting, bargaining, selling and assigning to said Walker, his heirs and successors, all the lands, tenements, goods, chattels, stock, promissory notes, debts, claims, demands, property and effects of every description belonging to them, either as partners or individuals, wherever the same may be, in trust, to sell and convert the property into money, and to collect the debts and demands, and out of the proceeds of such sales and collections to pay: 1st, expenses, costs and charges of the trust; 2nd and 3rd, out of the proceeds of the sales of the individual property of each partner to pay his individual debts, and the surplus to carry into the fund for the payment of partnership creditors; 4th, to pay rent due for premises occupied by them; and, 5th, to apply the residue to the liabilities of the said parties of the first part, in full or ratably, according to the sufficiency, giving him full power to demand, recover and receive of and from every person or persons all property, debts and demands due, owing and belonging to the parties of the first part, or either of them.

On May 5th there was judgment by default, followed by a final judgment on the 17th for $405.54 and costs. On the same 5th day of May the garnishee answered, stating that the loss by fire had been adjusted at $3,000, and that the company was indebted to Ashmead Bros. in this sum; but that on the morning next after the fire, and before the writ of garnishment was

served, the garnishee was notified that Ashmead Bros. had assigned all their interest under the said fire loss to John T. Walker, and that since then a copy of the assignment had been served, the same being annexed to the answer. The answer admits the question, as to whom the money is due, to the court.

On the 24th of August John T. Walker filed an affidavit entitled in the above cause, and to the effect that the money in the possession of the garnishee was *bona fide* his property as trustee for the purposes mentioned in the above deed of assignment to him, and upon this claim a jury was sworn on January 11th, 1885, to try the issue thus made between plaintiffs and said Walker; and having heard the evidence they found for the claimant. A motion for a new trial was made and overruled, and judgment was rendered that claimant had the right of property in the hands of the garnishee, and that he recover costs of the plaintiffs, etc.

The bill of exceptions shows that upon this trial the plaintiffs, who are plaintiffs in error, introduced in evidence the record of their suit, and rested, and thereupon the claimant introduced the above bill of sale from Clarence to William H. Ashmead, and the deed of assignment from the latter to such claimant, John T. Walker, and rested. The plaintiffs then put in evidence the deed of assignment from the Ashmeads to Whitfield Walker, and also placed on the stand

William H. Ashmead, who testified as follows: My name is William H. Ashmead; I was one of the firm of Ashmead Bros., composed of Clarance H. Ashmead and myself; I am the William H. Ashmead to whom the bill of sale was made by Clarence H. Ashmead, and I am the person also who made the assignment to John T. Walker, and also one of the parties who made the assignment in the name of Ashmead Bros. to Whitfield Walker. At the time I made the assignment to John T. Walker I was indebted individually in small amounts to one or two persons, and owed my brother, Clarence H. Ashmead, the six thousand dol lars mentioned in the assignment from my said brother to myself. My brother and myself finding it best to continue the business after the said bill of sale was executed, rescinded the sale, and afterwards executed the assignment to Whitfield Walker. At the time we executed the assignment to Whitfield Walker we were insolvent. At the time that my brother Clarence sold out to me, we did not announce any dissolution of our copartnership in the papers, or any other way. We afterwards found that I could not go on in business satisfactorily to both of us, and we thus rescinded the sale and made the subsequent assignment.

The following instructions were asked by the paintiffs, but refused and the refusal of each of them excepted to :

1. If the jury find from the evidence that at the time of the execution of the assignment to John T. Walker,

685 SUPREME COURT.

Schleicher, Schumm & Co., v. J. T. Walker.—Statement of Case.

William H. Ashmead was indebted to Clarence H. Ashmead, his former partner, in the sum of five thousand and odd dollars, as a part of the consideration of his purchase, then the said assignment to Walker, as a matter of law, is fraudulent and void, and the jury must find for the plaintiffs, and that the funds in the hands of the garnishee is subject to plaintiffs' garnishment.

2. Partners may make *bona fide* sales of their property at any time before their creditors acquire a lien, but a sale directly or indirectly to one of the partners with a stipulation that he will pay the firm's debts, is not such a *bona fide* sale so as to divest the property of its character as firm property primarily liable for firm debts, and a partnership creditor by his attachment or garnishment create a lien paramount to the claim of the partner so purchasing, or an assignee of said partner.

The Judge, however, charged the jury at the request of the claimant as follows:

1. If you believe from the evidence that the assignment from Clarence Ashmead to William Ashmead, and the assignment to John T. Walker, were made in good faith, and without any intent to hinder, delay or defraud the plaintiffs or other creditors of Ashmead Bros., you will find for the claimant.

2. If you believe from the evidence that the assignment from Clarence Ashmead to William Ashmead

was not made in contemplation of insolvency, and was made without intent to hinder, delay or defraud the plaintiffs or other creditors of Ashmead Bros., and that the assignment to Walker was in good faith, and without any such intent, you will find for the claimant.

There were also charges as to the form of the verdict, which need not be recited.

Each of the charges given at the request of the claimant was excepted to.

The other facts in the case are stated in the opinion of the court.

*A. W. Cockrell & Son* for Plaintiffs in Error.

The appellants sued Ashmead Bros., the Insurance Company being impleaded as garnishee, and recovered judgment. John T. Walker, as assignee of Wm. H. Ashmead, claims the funds disclosed in the answer of the garnishee, and the question raised by the Record is whether the claim of the assignee or the appellants as judgment creditors is superior.

The evidence makes it clear that the funds sought to be condemned to the partnership debts were partnership assets, at the time Clarence H. Ashmead sold out to his brother, Wm. H. Ashmead, his interest in the partnership concern. And it further appears that at the time of the transfer, the appellants were part-

nership creditors of the firm, and that the firm was in fact insolvent.

Burwell on assignment says in relation to the power of one partner to assign his interest:

"The power of each partner over his own share or "interest of the partnership property stands upon an "entirely different footing from his power over the "partnership property generally. No partner owns "absolutely any part of the property. His interest is "an interest subject to the interest of his co-partners. "While therefore he cannot transfer his share of any "specific partnership property, he may transfer the in- "terest which he has in the firm property, subject to "the rights of his copartners; and he may make a "valid assignment of his interest to trustees for the "benefit of his creditors. But such an assignment will "pass only so much as may remain after the payment "of the firm debts and a settlement with his copart- ners." Page 126, and cases cited. To the same effect is Arnold vs. Wainwright, 80 Am. Dec. 449, note.

Conceding that the sale by Clarence H. Ashmead worked a dissolution of the partnership, the rules of law applicable to such a dissolution, as well as the terms of the sale, impressed upon Wm. H. Ashmead, in reference to the partnership ·funds, the relation of trustee to effect a fair settlement and distribution thereof. Stephens vs. Orman, 10 Fla., 101.

This principle is thus formulated elsewhere. The relation of partners, their rights and duties, as between

themselves, are to be governed by the rules applicable to trustees and agents ; and the trust relation which exists between them is not terminated with the dissolution, but continues until a final adjustment and settlement of the partnership affairs is had. Story's Part. (5 Ed.), Secs. 174, 378 ; Pomeroy vs. Benton, 57 Mo., 531 ; Filbarn vs. Ivers, 4 Southwestern Rep., 674, (Missouri) June 6th, 1877.

So too, in the case of Marsh vs. Bennett, in the Circuit Court of the United States for the District of Michigan, it was held that by the dissolution of a partnership, provision being made in the articles of dissolution for the payment equally of all the creditors of the firm, by the partner who purchases the interest of the retiring partner and continues the business, such partner is a trustee for the creditors of the firm ; and a subsequent assignment by such partner of the partnership effects, preferring certain creditors to others, and contrary to the stipulation in the articles of dissolution, is fraudulent and void. 5 McLean, 117 ; Yale vs. Yale, 33 Am. Dec., 393 ; Wilson vs. Robertson, 21 N. Y., 587 ; Dimon vs. Hazard, 32 N. Y., 65 ; Roop vs. Henon, 17 N. W. Rep., 353 ; same case, 15 Nebraska, 73.

In the case at bar Clarence H. Ashmead sold his interest in the partnership asssets for five thousand dollars, the purchase money being evidenced by the note of W. H. Ashmead for that amount executed to Clarence H. Ashmead. And this note was outstanding at

44

the time of the assignment to Walker, and being an indebtedness of Wm. H. Ashmead, was protected by the terms of the assignment; Clarence H. Ashmead was therefore an equal beneficiary to the extent of five thousand dollars in *that* assignment thus made to do double duty, in that it shields partnership assets from partnership debts and secures to the retiring partner a lien on partnership funds to secure an individual debt, due from his late partner, growing out of partnership transactions to the disparagement of Clarence's partnership debt.

The protection we rely on is thus stated in a recent Alabama decision:

"One member of a firm, whether existing or dis-"solved, cannot appropriate the assets of the firm in "satisfaction of his individual debts." 3 Southern Rep., 677; Cannon vs. Lindsey (Alabama), Feb. 2, 1888; 85 Ala., 198.

And Conroy vs. Woods (California), 73 Am. Dec., 605, and notes, supports the proposition that although partners may make a *bona fide* sale of their property at any time before their creditors acquire a lien; a sale directly or indirectly to one of the partners with a stipulation that he will pay the firm debts, is not such a *bona fide* sale as to divest the property of its character as firm property, primarily liable for firm debts, but that where partner buys interest of copartners in firm, agreeing to pay the firm debts, the property of the firm remains bound for such debts just as before the sale.

The result wrought by the decision of the court denying the right of the judgment creditor to appropriate any part of the funds garnisheed is striking.

Clarence H. Ashmead who, as a member of the firm of Ashmead Bros., stood to the appellants, as to the judgment they were seeking to enforce, in the relation of a defendant therein, has not only placed the assets of the firm beyond the reach of his creditors, but by the contrivance of two conveyances, one from him to his brother, and the other from his brother to an assignee for the use of Clarence as a creditor of William, has managed to get *an interest* in the proceeds of the firm assets, discharged by the ruling of the court, from the claims of *his* creditors.    This is not an accidental but a necessary result of the judgment assigned as error.

The assignee is bound, by the terms creating his trust relation to this fund, to pay to Clarence H. Ashmead the proportion of this fund which a creditor holding a valid claim of five thousand dollars against Wm. H. Ashmead may demand.

We submit such an assignment as matter of law is null and void as to the partnership creditors of Ashmead Bros.

*Walker* and *L' Engle* for Defendants in Error.

RANEY, C. J. :

In Griffin vs. Orman, 9 Fla., 22, and 10 Fla., 9, there had been a partnership between Sewell, Orman and

Young, under the name of Orman & Young, and the period for which, by the articles, it was to last, had expired, but there had been no settlement between the partners when, in January, 1829, Orman and Young sold their entire interest in the assets of the concern, for the consideration of $17,500, payable out of such assets, which payment was so made, to Sewell, he assuming the payment of the debts of the firm, and executing to them a bond, with surety, conditioned for the payment to the same.   It was contended that Orman and Young had an equitable lien upon the partnership property for amounts which they had paid for the firm subsequent to the sale.   This court held that this would, notwithstanding the dissolution, have been so, but for the agreement represented above, the effect of which was, in its opinion, that the partnership stock became the exclusive property of Sewell, and that Sewell should pay all the debts, and the indemnity bond being for security that he would do so.   It will be borne in mind, says the opinion, that the partnership property was not left in the hands of Sewell to pay the debts with, he assuming the trust.   "The partnership is dissolved, a final settlement made, an agreement entered into between the partners, in which the creditors are not parties, that Sewell as a part of the purchase money will pay all the debts, not specifically out of the partnership property, but that he would pay them, and as an indemnity against their suffering he executes a bond with security."   That the fact of taking this bond with security, and the fact of Orman and

Schleicher, Schumm & Co., v. J. T. Walker.—Opinion of Court.

Young covenanting to warrant and defend against their claim seemed conclusive that it was the intention of the parties that the effects assigned to Sewell should be appropriated to his private use.

In West vs. Chasten, 12 Fla., 315, there was an agreement between the remaining and the retiring partner by which the former assumed the debts of the firm, and agreed to save the latter harmless from the same, the latter transferring and assigning all his interest in the goods to the remaining partner, and it was held that by virtue of this agreement the partnership property ceased to be joint property and the lien or equity of the retiring partner to have a sale of the property and an application of it to the joint debts was destroyed. See also Upson vs. Arnold, 19 Ga., 190.

It is true that these decisions were in cases between former partners, but it must be remembered that the right or equity of a creditor of a partnership to have partnership assets applied to partnership debts as against the individual creditor of any one member of the firm is through that lien or equity of the other member or members, which constitutes the right of the latter to such application. Story's Equity, secs. 675 and 1253; Story on Partnership, secs. 358, 360; Washburn vs. Bank, 19 Vt., 278; Bardwell vs. Perry, Ibid, 292; Rice vs. Barnard, 20 Vt., 479; Smith vs. Edwards, 7 Humph., 106; Ex parte Ruffin, 6 Vesey, 119; Ex parte Williams, 11 Vesey, 3; Ex parte Rowlandson, 2 V. & B.; 172; Baker's Appeal, 21

694                    SUPREME COURT.

Schleicher, Schumm & Co., v. J. T. Walker.—Opinion of Court.

Penn. St., 76; Clement vs. Foster, 3 Ired. (Eq.), 213; Story on Partnership, sec. 359; Dimon vs. Hazard, 32 N. Y., 65; Sage vs. Chollar, 21 Barb., 596; Robb vs. Mudge, 14 Gray, 534; Rankin vs. Jones, 2 Jones, (Eq.), 169.

One partner may upon a voluntary dissolution of a firm transfer to his copartner all his interest in the partnership concern, and if he do so *bona fide* and for a valuable consideration, before any lien has been acquired thereon by partnership creditors through an execution, an attachment or otherwise, the same will, if such be the intention of the partners, vest in the purchasing partner as his sole or individual property, divested of the right or equity mentioned above, in the selling partner. Not only do the authorities cited above affirm this proposition, but the two decisions of this court are in conflict with the theory of the second instruction asked by the plaintiffs in error, that a stipulation upon the part of the purchasing partner to pay the firm debts would be fatal to the good faith of the transfer and to the divestiture of the joint ownership or partnership character of the property. There are numerous authorities in which the transfer has been sustained and the vesting of the property in the purchasing partner as his individual property has been upheld as against the claims of firm creditors, notwithstanding the presence of such a covenant; and such covenant may be the sole consideration of the transfer. West vs. Chasten, 12 Fla., 315; Story on

Partnership, sec. 359; Croone vs. Bivens, 2 Head, 339; Dimon vs. Hazard, 32 N. Y., 65; Ladd vs. Griswold, 4 Gilmer, 25. The fact, however, is that in the case before us there was no such stipulation, and whether such an obligation upon the purchasing partner is implied by the terms of the agreement is a proposition which has not been argued. If it is implied, the same result follows as if it had been expressed.

It is also settled that where one partner transfers his entire interest in the partnership concerns to his copartner so as to vest in him the partnership assets as his sole property, a dissolution of the partnership results and the purchasing partner may as against any simple creditor of the partnership, assign the property thus vested in him as his sole property, for the payment of his individual indebtedness. He can exercise the same dominion over it that he might over any other individual property. A partnership creditor can of course sue him and his former partner, and can levy his execution on the separate property of either, just as he could have sued both before the transfer and have levied upon the joint property of the firm or the several property of either member; but if before a lien has been thus or otherwise acquired by the firm creditors, the purchasing partner shall have transferred or applied in good faith the effects which have thus become his sole property; to the payment of his individual indebtedness, such transfer or assignment will be sustained in favor of such individual creditor.

The selling partner by his sale parts with the equity which he would have retained had he not sold his interest to his copartner, and thus falls the support of any claim to such equity by the partnership creditors. The purchasing partner as sole owner has as against partnership creditors the same right to apply this sole property to his individual debts, as he has against individual creditors who have not acquired a lien thereon by attachment or execution, or in other lawful manner. Bullit vs. Chartered Fund of M. E. Church, 26 Penn. St., 106 ; Dimon vs. Hazard, 32 N. Y., 65 ; Sage vs. Chollar, 21 Barb., 596 ; Grover's Appeal, 29 Penn. St., 9 ; Allen vs. Center Valley Co., 21 Conn., 130 ; Rankin vs. Jones, 2 Jones (Eq.), 146 ; Robb vs. Mudge, 14 Gray, 534.

At the time Clarence Ashmead sold to William H. Ashmead, the plaintiffs in error had no lien on the partnership assets. This is clearly affirmed by the authorities cited above. Clarence had the right to make, and William the right to receive the transfer, and if done in good faith the partnership creditors cannot complain. Its validity depends upon the *bona fides* of the transaction. Ex parte Williams, 11 Vesey, 3. Where, at the time of the transfer, the firm and each of the partners are insolvent, as in Ex parte Mayon, 4 De G., J. & S., 663, or the firm had become insolvent, as in Yale vs. Yale, 18 Conn., 185 ; Roop vs. Herron, 15 Neb., 73 ; and Wilson vs. Robertson, 21 N. Y., 587, the transfer it seems should be held fraudulent and

void as to the partnership creditors, yet there is authority in the effect that insolvency at such time will not of itself avoid the transfer. Howe vs. Lawrence, 9 Cush., 553; Allen vs. Center Valley Co., 21 Conn., 130. These parties may have been entirely solvent at that time, notwithstanding their subsequent insolvency; Ex parte Fell, 10 Vesey, 347; Ex parte Walker, 4 De G., F. & J., 508; and if they were, such subsequent condition will not defeat a transfer which was not otherwise fraudulent. That they were insolvent when the second assignment was made, does not prove that they were so a month and a half before, when the sale was made by Clarence to William H. Ashmead. Though there is testimony that this sale was rescinded, there is none that John T. Walker was a party to the rescission, or that it was before the assignment to John T. Walker, or that the assignment of the insurance money to John T. Walker was ever abrogated. The questions of the good faith of the sale to William and of his assignment to John T. Walker, and of intent to hinder and defraud creditors, and of whether or not such sale was made in contemplation of insolvency, were fairly submitted to the jury and they have passed upon them, and there is no testimony in the record that justifies interference by an appellant court with their verdict? To justify such interference it must appear at least clearly that they have erred.

The authorities cited by plaintiffs in error do not conflict with the views we have announced. The lan-

698 SUPREME COURT.

Schleicher, Schumm & Co., v. J. T. Walker,—Opinion of Court.

guage quoted from Burrill on Assignments, sec. 88, p. 120, refers to an assignment by one partner to a third person, and in the same section it is said that an assignment by one partner of all his interest to the other partner or partners works a dissolution of the firm, and the remaining partner may thereupon execute an assignment of all his property, whether belonging to the previous firm or not, in trust for the payment of his individual creditors. Pomeroy vs. Benton, 57 Mo., 531; was a suit involving questions between partners, as was Filburn vs. Ivers, 92 Mo., 388. In Marsh vs. Bennett, 5 McLean, 117, the assignment by the retiring partner to the remaining one was expressly "for the purpose of paying" off the partnership creditors, thus constituting or continuing him a trustee for such creditors. Conroy vs. Woods, 23 Cal., 626, holding that where a partner buys the interest of his copartners and agrees to pay the firm debts, the property of the firm remains bound for such debts just as before the sale, is in conflict with the above decisions of this court and the weight of authority. Yale vs. Yale, and Wilson vs. Robertson are explained above, as is Dimon vs. Hazard, Cannon vs. Lindsey holds that the appropriation of partnership assets by one partner to the payment of his own debts, without the assent of the other partner is a fraud on the latter; and Arnold vs. Wainwright, 6 Minn., 358, in so far as it should be noticed, involves the question of the rights of the pur-

chaser of land, partnership assets, where the legal title stood in the name of a partner.

We will not be understood as expressing an opinion whether or not the assignment to John T. Walker is one for the benefit of his individual creditors, and excluding creditors of the firm; nor as intimating that Clarence Ashmead would be permitted to be paid out of the proceeds of the assignment as against the plaintiffs in error, even if the sale to him had not been rescinded; Strattan vs. Tabb, 8 Ill., App., 225; nor as committing ourselves as to whether the use made of the "claim" proceeding in this case is proper.

The judgment is affirmed.