CHARLES DIMON, Receiver &c., *v.* WILLIAM H. HAZARD AND WILLIAM H. HAZARD, JR.

When one of two partners retires from business, relinquishing to the other all his interest in the partnership property, the remaining partner acquires the same dominion as if it had ever been his own separate property.

The assignment being made in good faith, the title vests in the assignee as his own private estate, free from any lien or equity in favor of partnership creditors.

Such assignee may lawfully transfer such property in payment of his individual debts.

THE complaint in this action is by the plaintiff, as receiver, appointed in supplementary proceedings instituted against the defendant, William H. Hazard and one Horatio Eagle. It sets forth his appointment, the recovering of judgments by certain creditors against the firm of Eagle & Hazard, the issuing of executions thereon, and return thereof unsatisfied. That, on the 27th of January, 1860, the said William H. Hazard made and executed an assignment to said Hazard, junior, which recited the copartnership between said Eagle & Hazard, and that, on or about the 23d day of November, 1859, the same was dissolved, and said Eagle transferred all his interest in the entire copartnership property to said Hazard, and said assignment also recited that said Hazard was desirous of providing for the payment of the debts of said copartnership, and of his individual debts, by an assignment as well of all the said copartnership assets as of his individual property. Whereupon, in consideration of one dollar, he assigned, transferred and set over unto the said Hazard, Jr., "All the real estate and chattels real, personal property and effects of the said party of the first part, in trust, after payment of the expenses of executing the trust, to pay all the debts set forth in schedule B, annexed to the assignment, if sufficient to pay the same in full; if not, then to pay the same *pro rata,* and to apply the residue to pay all the other debts of the said party of the first part, and to return any surplus to him."

TIFFANY.—VOL. V.    9

The complaint further alleged that schedule A, annexed to said assignment, contained a list of said assigned property, all being the partnership property of said Eagle & Hazard. That schedule B, annexed thereto, contained a list of the preferred debts, amounting to the sum of seventy-five thousand dollars and upwards, a large portion of which, and to the amount of $5,000 and upwards, were debts contracted by said Hazard individually, and not as partner, as aforesaid, and for which said Eagle was in no manner liable; and that, at the time, said Hazard owed other individual debts to the amount of $15,000 and upwards. The complaint charges that said assignment was not accompanied by an immediate delivery, or followed by an actual or continued change of possession of the things assigned. That, at the time of making the assignment by Eagle to Hazard, and by Hazard to Hazard, Jr., the said assignors, and each of them were, and the said partnership was, insolvent.

That said Hazard, on the 2d of February, 1860, conveyed in fee to said Hazard, Jr., a certain lot of ground, with a dwelling house thereon, situated in the city of Brooklyn. The complaint charges that said assignment and conveyance were each made in trust for the benefit of the person making the same, and with intent to hinder, delay and defraud the creditors of said partnership, and of said individual members thereof, and were, and each of them was, fraudulent and void.

The answer denies all fraud in the making of said assignments and conveyance, and alleges that said firm of Eagle & Hazard was dissolved by mutual consent, on or about the 23d of November, 1859, the said Eagle, at that time, retiring from said firm, and said Hazard assuming all the debts and receiving all the assets of said firm. That, at the time of making said assignment, said Hazard conducted said business individually and alone; and that the property and assets which had been of said firm, became his individual property, from and after the dissolution of said partnership. That, in addition to the property so assigned by said Eagle, the said Hazard had and possessed individual property, which

he had owned before the dissolution of said partnership, and continued to own, in which said Eagle had no interest, and that said individual property was greater in amount and value than the individual debts of said Hazard.

The action was tried by the court without a jury, and the court found the following facts:

1. The judgments were recovered and executions issued thereon and returned, as alleged in the complaint.

2. The plaintiff was duly appointed receiver as alleged in the complaint.

3. The assignment mentioned in the complaint dated January 27, 1860, by the assignor, William H. Hazard, was not made with intent to hinder, delay or defraud his creditors.

4. Said assignment was not taken or accepted by the assignor, William H. Hazard, Jr., with intent to hinder, delay or defraud the creditors of the assignor.

5. Said assignment was executed, delivered and accepted in good faith and without any intent to hinder, delay or defraud the creditors of said assignor.

6. The allegations of fraud in the complaint are not proved but are disproved.

7. Said assignment is not fraudulent or void, but is good and valid, and as a conclusion of law, that said assignment is not fraudulent on its face, but is valid on its face.

2. Said assignment was valid in law, and that the plaintiff was not entitled to judgment. Judgment for defendants was, on appeal, affirmed at the General Term, and the plaintiff now appeals to this court.

*Charles H. Smith*, for the appellant.

I. The assignment is fraudulent and void, because it conveys the partnership property of Eagle & Hazard in trust to pay the individual debts of Hazard, some of them in preference to, and others *pro rata* with, the partnership debts, and this purpose is written on the face of the instrument.

Also because it conveys individual property to pay joint debts to the prejudice of individual creditors.

The court in General Term say (p. 81): "Upon the princi-ple laid down in *Wilson* v. *Robertson* (21 N. Y., 587), this judgment must be reversed unless the assignment made by Eagle to Hazard" converted the partnership into individual property, and on the authority of *Howe* v. *Lawrence* (9 Cush., 553), affirmed the judgment. The court do not say they approve this decision, but treat it as a binding authority.

It is noted that *Robb* v. *Mudge*, proceeded on *Howe* v. *Lawrence*, and the same judge, Bigelow, delivered the opinion in each, and both cases proceeded on *ex parte Ruffin* (6 Vesey 119), *ex parte Fell* (10 Vesey, 347) and *ex parte Wil-liams* (11 Vesey, 3), and all these cases ignore the well settled principle of equity, that an equitable estate or interest never merges in a legal estate, where justice requires it to be otherwise. (*James* v. *Morey*, 2 Cowen, 246, 285, 7, 301, 3, 9, 318; *Cleft* v. *White*, 2 Kern., 519; *Angel* v. *Boner*, 38 Barb., 425; *Marvin* v. *Stone*, 2 Cow., 807; Story Equity, § 1196, 1210, *et seq.;* id., § 1253, 7, 65; 4 Kent. Com., 102; *Mechan-ics' Bank* v. *Edwards*, 1 Barb. S. C., 278.)

In *Van Alstyne* v. *Cook* (25 N. Y., 493), Smith, J., said the property of all partnerships is a trust fund for the payment of the debts, the only difference between a general and a limited partnership being the restriction on the right of the latter to give preferences, and it is upon this principle that a court of equity will entertain a suit against a limited part-nership by a creditor at large.

In the case of *Hartley* v. *Harrison* (24 N. Y., 170), this court· decided that the equitable right of a mortgagee to hold a grantee of the mortgaged premises, who had assumed the mortgage as part of the consideration, could not be defeated by a subsequent release by the mortgagor, with whom the covenant had been made.

The right of partnership creditors is only different from the right of a mortgagee in such case, because they have no right as *cestuis que trust* before judgment and execution to compel the application of the partnership property, but they have an *inchoate right*, which cannot be divested with-out their consent. It must be a singular rule that the joint

creditors cannot, as beneficiaries or *cestuis que trust,* do what their mere agent the debtor may do. (*Crippen* v. *Hudson,* 3 Kern., 167; but see *Fasset* v. *Tallmadge,* 18 Abb., 48.) But taking the rule with this qualification as to the mode of enforcing it, there is a clear equitable claim of the joint creditors to the joint property, which is violated by the application of the property to other purposes, either by the direct action of both partners, or by the transfer by one to the other by which the same result may be effected.

So in *Matthews* v. *Aikin* (1 Comst., 600), a person who had guaranteed the payment of a debt but *without any request of the debtor,* was held to be entitled to substitution to the security held by the creditor. The right was said to rest on the "broad ground of natural justice and moral obligation."

The right of partnership creditors is, in effect, a right of substitution, to be enforced independently of the agreements of the partners as between themselves.

The authorities cited from Vesey and the two Massachusetts cases wholly ignore this well settled doctrine of *non merger.*

In *Wilson* v. *Robertson* (21 N. Y., 592), Judge WRIGHT, delivering the opinion of the court, says; "An appropriation of the firm property to pay the individual debt is in effect a gift from the firm to the partner. * * Neither the firm nor one partner were in a condition to make a gift of the firm assets to the other partner or his creditors."

In *Burtus* v. *Tisdall* (4 Barb., 571), the General Term of the Supreme Court for the second district decided that where insolvent partners sold the firm assets and took notes for it, which they divided between them, and of which one partner applied those received by him to pay an individual debt, it was a fraud upon the creditors of the firm, and the amount so paid for the individual debt could be reached by a creditor's bill.

Judge STRONG, after stating the principle, says (p. 589): "Can rules so manifestly just be subverted by the agency of

the partners or their separate creditors?" (P. 590.) "I shall hold the right to priority cannot be impaired by any consideration having reference to the interests of partners or their individual creditors. A gift to a stranger would be ineffectual as to creditors, why not a donation to each partner? If we hold that partners can not assign to prefer an individual creditor, yet that they could divide the property, and each could apply his share, &c., it would be deciding that an inequitable object could be accomplished by indirect, which could not be by direct, means."

In *Goertner* v. *Trustees of Canajoharie* (2 Barb. S. C., 625), Judge PAIGE says : "I have no doubt if after the dissolution, leaving outstanding debts, a third person purchases from a partner, known to him to be insolvent, the partnership property, with knowledge that such partner intends to apply the proceeds to his individual debts, the purchase would be declared fraudulent and void." To the same effect are the remarks of the chancellor in *Kirby* v. *Schoonmaker* (3 Barb. Ch., 592), cited with approbation in *Wilson* v. *Robertson.*

In *Tenney* v. *Johnson* (43 N. H., 144), the partners, on account of some disagreement, referred the adjustment of their matters to arbitrators, who made an award in writing, reciting their appointment "to settle all disputes, &c., in regard to 'the *final settlement* and *closing up* of the business of the firm,'" and deciding that P. was to pay C. $251.39, and should "have all the goods, &c., of the firm, and 'should pay all demands against the firm.'" Afterwards the sheriff sold the goods on executions against P. individually, and against the firm, the former being prior in time, and paid the money, on indemnity, to the individual creditor, and the joint creditors sued the sheriff. The court decided that the right of priority of the partnership creditors did not rest on the lien of the partners between themselves, but was recognized by the law as appertaining to the creditor himself, and which might be asserted by him as his legal right, and that it was not in the power of one partner to waive the right of the partnership creditor. "If it be held that this right of

priority may be defeated by a sale from one·partner to another it would be a most convenient mode of evading a salutary principle." (*Topliff* v. *Vail*, Harrison Ch., 340; *Sewall* v. *Russell*, 2 Paige, 175; *Sedam* v. *Williams*, 4 McLean, 51; *Collins* v. *Hood*, id., 186; *Tillinghast* v. *Champlin*, 4 R. I., 173; *Wilder* v. *Chapman*, 4 Edwards, 669; *Robb* v. *Stevens*, 1 Clarke, 191; *Jackson* v. *Cornell*, 1 Sandf. Ch., 354.)

The decision of the Supreme Court places a sale by one partner to another on the same ground as a sale to a *bona fide purchaser without notice*, which a partner in such case is not and cannot be. That decision also takes no notice of the recitals which call it partnership property.

It was a fraud on the individual creditors, to apply the individual property to the partnership creditors, and being void as to them is void as to all. (*Leitch* v. *Hollister*, 4 Comst., 215; *O'Neil* v. *Salmon*, 25 How. Pr., 346; *Collomb* v. *Caldwell*, 16 N. Y., 484; *Jackson* v. *Cornell*, 1 Sandf. Ch., 348; *Holton* v. *Holton*, 40 N. H., 77; 17 N. Y., 25; 5 Cowen, 580.)

II. 1. The masters *being part owners*, had no claim on Eagle and Hazard for their whole wages, or for any more than their share of the deficiency, if any, after applying the earnings of the vessels.

2. In *Nicholas* v. *McEwen* (17 N. Y., 22), it was decided that an assignment containing a provision to pay the assignee a reasonable *counsel fee*, is void on its face.

(*a.*) If the provision had been to pay the assignee a given sum, without specifying for what, and it had been proved that the sum was for a "reasonable counsel fee," the assignment would have been equally held void. (See also, *Planck* v. *Schermerhorn*, 3 Barb. Ch., 644; *Webb* v. *Daggett*, 2 Barb. S. C., 9; *Shelton* v. *Dodge*, 4 Denio, 217; *Seymour* v. *Wilson*, 19 N. Y., 418.)

(*b.*) So in the case at bar, if the fact that the sums provided to be paid to Bowen and Hallock, were for moneys due them by a partnership of which *they were themselves members*, and for which, if any debt existed, they *were*

*themselves co-debtors with the assignor,* and had been recited on the face of the assignment, it would be void upon its face; these facts being proved the same result follows.

(*c.*) Ship owners are *quasi partners,* and liable *in solido* for the debts of their vessels. The master, unlike any other sailor, has *no lien.* Each owner, as in other cases of partnership, has a lien on the shares of the others to compel contribution. (Abbott on Shipping [7th Am. ed.], 655, 656, margin; Story on Contracts, § 376, *a.*; Story on Partnership, § 221, 407, 408, 442, 444, 455; 3 Kent Com., 40, 154; *Nichols* v. *Vandewater,* 20 Johns., 611; *Van Bokkelen* v. *Ingersoll,* 5 Wend., 315; *Dunham* v. *Jarvis,* 8 Barb., 88.)

3. It was a fraud to prefer these masters for the *specified sums named, which were guessed at,* when the correct amount, if anything due, could only be ascertained by an accounting, and when *the amounts were subject to the contingencies chargeable to the preferred creditors as part owners.*

The learned judge *refused to find* whether the sums preferred were lawful debts.

The assignor swears in several places that he not only does not know the amounts to be due, but that he stated them in the assignment *at less than he supposed was due.*

4. The assignment is imperative that the specific sums named shall be paid, and there is no saving clause whereby the real sum due only could be enforced.

The plaintiff also proved, and requested the judge to find the fact that $400 of the assignee's preferred debt was for money *of his earnings* lent him, while under age, to his father, the assignor. The same considerations arise from this fact as those relative to the debts of the masters.

It is also insisted that the appointment of the *irresponsible young son* of the assignor to be assignee, and the continued possession of the house, &c., being wholly unexplained, afford conclusive evidence of a design to keep the property under control of the assignor, and the conclusion of the court below that these facts did not show fraud, is a conclusion of law. It is noted that the assignment was made before the passage of the act of 1860, requiring

security. (*Read* v. *Emery*, 8 Paige, 417, and cases cited in note; Story's Equity, § 309; *Bailey* v. *Burton*, 8 Wend., 350; per NELSON, J., *Cunningham* v. *Freeborn*, 11 Wend., 256; *Cram* v. *Mitchell*, 1 Sandf. Ch., 254; *Sands* v. *Codwise*, 4 Johns., 500, 536, 582; *Currie* v. *Hart*, 2 Sandf. Ch., 353; *McMahon* v. *Harrison*, 2 Seld., 447; *Robinson* v. *Stewart*, 6 Seld., 189; *Browning* v. *Hart*, 6 Barb., 91; *Litchfield* v. *Pelton*, 6 id., 187; *Connah* v. *Sedgwick*, 1 Barb., 210; *Vance* v. *Philips*, 6 Hill, 433; *Tripp* v. *Childs*, 14 Barb., 85; *Haggerty* v. *Pittmann*, 1 Paige, 299; *Rosenburg* v. *Moore*, 11 Md., 376.)

III. The judge refused to find *whether or not* certain facts existed. It is noted that the request was not to find that *they did exist*, a refusal to do which might be equivalent to a finding that they did not exist. This is the same as if a judge at the circuit refuses to leave material facts to the jury, when thereto requested, and is equivalent to a decision that the facts if found would be wholly immaterial. (*Grant* v. *Morse*, 22 N. Y., 325.)

The finding of *no fraud in general terms* should not prejudice the plaintiff in such case. The whole testimony is that of the two defendants. It was taken before a referee and reported to the court, and the appellate court can as well judge of its effect as the judge at Special Term.

IV. There was error in awarding costs to be collected of *the judgment creditors* mentioned in the complaint as *the parties represented* by the plaintiff as receiver. (*McHoag* v. *Donnelly*, 27 Barb., 100; *Wheeler* v. *Wright*, 14 Abb., 354.)

Also allowing a per centage under § 309. This is one of the cases mentioned, § 308, to wit: "for an adjudication on an instrument in writing," and is expressly excepted by § 309, and therefore *the defendant* cannot have a per centage. (*Gray* v. *Robjohn*, 1 Bosw., 612.)

*Samuel E. Lyon*, for respondent.

I. The judge at Special Term, having found that there was no fraud, in fact, in the execution of the assignment, the only point open to consideration upon this appeal is, whether

the provision of the assignment directing the payment of Hazard's individual debts makes the assignment void?

By this transfer the legal title to the partnership property was vested in Hazard, with the right to use and dispose of it as a separate estate.

Collyer on Partnerships, § 174, Perkins' edition, says: "In the words of EYRE, Ch. J., partners may, by their acts, convert the joint property of the general partnership into the separate property of an individual, or into the joint property of two or more partners, or *e converso.*"·

"These transactions," says Collyer, "if done *bona fide,* and for a valuable consideration, are binding upon third persons, and materially affect their interests." (See, also, §§ 894, and 903, in which the cases are cited; § 894, page 756, Perkins' Collyer.)

"Whatever has been converted into separate estate, and is no longer in the order and disposition of the partnership, is separate estate under the bankruptcy; therefore, if upon the dissolution of a partnership, the retiring partner *bona fide* assigns all his interest in the stock and effects to the remaining partner, who afterward becomes bankrupt, so much of the partnership stock so assigned as remains in specie will vest in the assignees of the bankrupt as separate property, and will be distributable accordingly." (See 6 Ves., 119; 10 Ves., 347; Story on Part., §§ 358, 359; 21 Barb., 596; 1 Barb. Ch., 480; 26 Penn. S., 108; 9 Cush., 555; 14 Gray, 534.)

This case is distinguished from *Wilson* v. *Robertson.*

II. In the case of *Wilson* v. *Robertson,* in the language of the opinion: "It (the assignment) embraced partnership property wholly, with the exception of a house and lot, the individual property of Crocker, *incumbered by two mortgages for more than the value.*"

In this case the assignment embraced property in which Eagle never had an interest of more value than the amount of the debts for which he was not liable, leaving the *entire* amount· of partnership assets to apply to the partnership debts, even if they had been partnership assets. ·

In that case the court says: "The question, therefore, is distinctly presented whether it is a fraud upon the creditors of an insolvent firm, for such firm to assign the *partnership effects* in trust to pay the *private debts* of the individual members to the extent of nearly exhausting the joint fund, *or to any extent*, where such fund is inadequate to satisfy the creditors of the firm."

Now, it is clear that this whole question rests upon the naked proposition that it is the *intent to apply the partnership property to pay individual debts* which constitutes the fraud, and therefore, where *individual* property, fully sufficient to pay *individual* debts, and *so considered at the time*, is assigned, no such intent to apply partnership property to that purpose can be supposed to exist. And hence, in the absence of such an intention, the assignment is valid.

The court adds: "It was *joint* property and funds, and although Crocker's equity of redemption of the lot and dwelling may have passed, there was nothing added thereby to the *fund*."

Emphasis is given to both facts — that it was a joint assignment, and that nothing was added to the fund from the individual property assigned.

Here it was an individual assignment. Eagle has never joined in it, and he had no interest in the property when it was made. There was added to the fund of individual property enough to pay the individual debts. The distinction is manifest.

The court lays stress upon the fact that Staples, the partner of Crooker, was co-assignor with him, and appropriated, by his acts, his property to the payment of the partnership debts.

This distinction has been taken in the first district in the case of *Kenneth* v. *Barrat*, 34 Barb., 34.

In the case of *O'Neill* v. *Salmon* (25 How., 247), also the assignors were copartners at the time, and the assignment was jointly by them of all their property, copartnership and individual. The justice who decided the case at Special Term, says: "*The evidence shows that the copartnership was*

*insolvent, and that neither partner had separate property sufficient to pay his individual debts.*"

The note on page 2d of appellant's argument misapprehends the pleadings.

The allegation in the complaint is, that at the time of making the transfer by Eagle to Hazard, to wit, on the 29th of November, 1859, and at the time when Hazard, senior, made the assignment to Hazard, junior, to wit, on the 27th January, 1860, Eagle and Hazard were insolvent.

There is no answer by Eagle, for he was not made a party. Hence the transfer by him is treated as valid by the plaintiff.

The answer of Hazard states that he does not know whether Eagle was insolvent when he made the transfer to him, and admits that *when he, Hazard, made his assignment on the 29th of January*, 1860, he was insolvent. His admission of insolvency related to the time when he made his assignment, and not to the time when Eagle made the transfer to him.

Whatever construction might be put upon the apparent failure to deny that part of the allegation of insolvency relating to the time of the transfer, the defendant gave evidence on that subject on the trial, and the judge, at Special Term, passed upon it so far as it related to the question of *bona fides*, which is all that it has to do with it.

On the trial the plaintiff gave no evidence of the insolvency of Eagle & Hazard on the 29th of November, 1859, but the defendants did, and showed that although the liabilities from the Kerosene Company were very large, Hazard was laboring under no serious embarrassments up to the time he was protested on the Kerosene Company's notes. He says, "My failure was caused by theirs."

This evidence, connected with the fact that Hazard had paid nearly fifty thousand dollars of partnership debts after the transfer to him, and before his assignment, in the absence of any evidence to the contrary, was certainly sufficient to enable the judge at Special Term to pass upon the *bona fides* of the transfer.

DAVIES, J.   Upon the facts found by the court, and those we have the right to assume it found, to sustain this judgment, the judgment appealed from must be affirmed.   All questions of fraud, in fact, in relation to the assignment sought to be set aside, are found adversely to the plaintiff, and there is nothing on the face of the assignment which would lead to setting it aside as void in law.

Nothing remains for consideration but the question whether the circumstance that the bulk of the property assigned had belonged to the partnership of Eagle & Hazard, although sold and transferred to Hazard individually some months before he made the assignment, could lawfully be assigned by Hazard for the payment of his individual debts.   It is to be observed that there is no finding by the court which raises the objection now taken.   In the absence of any finding of fact which would authorize this court to reverse the judgment, we are to assume the court found all such facts as are necessary to sustain it.   The general conclusion of the court or referee is to be construed as involving a finding upon all the material questions, though such a finding be not expressed in terms.   (*Grant* v. *Morse*, 22 N. Y., 323.)   We are authorized, therefore, to assume that the court found that the transfer by Eagle to his copartner Hazard, was *bona fide*, and that the assumption by the latter of the partnership debts, was a sufficient consideration therefor.   These facts being proved, or assumed to be proved, the court correctly decided, as matter of law, that such transfer made the partnership property of Eagle & Hazard, the separate property of Hazard, and that he could lawfully assign and transfer it in payment of his individual debts.   This precise point arose in the case of *Bullitt & Faithome* v. *The Chartered Fund, &c.* (26 Penn., 108).   Treadwell, one of the firm of Boswell & Co., retired from the firm, and assigned all his interest in the firm property to Boswell, the other partner.   He made an assignment of the same property, in payment of his individual debts.   It was argued that as to the claims in controversy, being part of the assets of Boswell & Co., Boswell had no power to assign them

in payment of a debt due from himself.   But the court said, it
is a sufficient answer to this that the partnership between
Boswell & Treadwell had been dissolved long before the
assignment, the outgoing partner had a right to demand that
Boswell should pay the debts of the firm, for such was the
contract.   The creditors of Boswell & Co., had a right to
demand that the assets of the firm, as well as the separate
property of the remaining partner, should go to the satisfac-
tion of their just claims, but they had no specific lien on
either which would enable them to follow it into the hands
of a *bona fide* purchaser.   When one of two partners retires
from business, relinquishing to the other all his interest in
the partnership property, the remaining partner has the same
dominion over it as if it had always been his own separate
property.

A similar question was adjudicated in *Howe* v. *Lawrence*
(9 Cush., 555).   The question there was, whether the property
which belonged to the partnership of Shaw & Gardner, and
which, upon the dissolution of the partnership, was sold and
transferred by Shaw, to Gardner, was to be treated as the
separate estate of Gardner, and to be appropriated as such,
to the payment of his separate debts, or whether, notwith-
standing the sale and transfer by one partner to the other, it
was still to be regarded as joint estate, and to be applied to
the payment of the debts of the partnership accordingly.
The court said that the right of copartners, upon dissolution,
to transfer the joint property to one of the firm, is clear and
unquestionable.   The effect of such transfer, as between
the partners, is to vest the legal title to the property in the
individual partner with a right to use and dispose of it as
his separate estate.   That it would seem to follow as a
necessary consequence, that the creditors of the firm, after
such conveyance, would have no right to look to the pro
perty transferred, as joint property, upon which they had
any specific claim or lien ; that if, in such transfer, there is
10 fraud or collusion between the copartners, for the pur-
pose of defeating the rights of joint creditors, and the
transaction is made in good faith, upon dissolution, and for

the purpose of closing the affairs of the partnership, the joint property thereby becomes separate estate with all the rights and incidents, both in law and equity, which properly attach thereto, and the court correctly remarked that the only limitation upon this right, is that it shall be exercised *bona fide*, and without any intent to defraud the creditors of the firm or to deprive them of their legal or equitable claims, upon the joint estate, in case of insolvency; and, as the result of the reasoning of the court, it was held, that if the transfer has been made honestly, and for a valuable consideration, the property has thereby become separate estate, wholly free from any claims of joint creditors. These principles are fully sustained by the authorities cited. (Coll. on Part., §§ 174, 894, 903; Story on Part., § 358; *ex parte Ruffin*, 6 Ves., 127; *ex parte Fell*, 10 Ves., 347; *ex parte Williams*, 11 Ves., 3; *ex parte Rowlandson*, 1 Rose, 416; *Campbell* v. *Mullet*, 2 Sw., 575; *Allen* v. *Center Valley Co.*, 21 Conn., 130, 137; *Ferm* v. *Monroe*, 1 Fost., 462, 469.)

The cases also recognize it as a well settled rule, that joint estate is not, so far as the rights of creditors are concerned, that which was such at the time of the dissolution, but that in which the partners are jointly interested for the purposes of the partnership and the settlement of its concerns, at the time of the institution of proceedings against the firm.

A like principle was enunciated in the case of *Robb* v. *Mudge* (14 Gray, 534), where the court held that, by the terms of the agreement of dissolution, the joint estate of the firm was converted into the private estate of Fain, the remaining partner, so that it could be applied only in payment of debts which were payable out of his private estate. That the sale and assignment of the property and assets of the firm by the retiring partner was made in good faith, and that they could not, in marshaling the assets in insolvency, be treated as joint estates, or applicable to the payment of joint debts. The court observed, that this point was adjudicated on full and careful consideration in *Howe* v. *Lawrence* (9 Cush. *supra*). The same doctrine has received the sanc-

tion of our Supreme Court in *Sage* v. *Chollar* (21 Barb., 596), where Judge HARRIS said, upon a voluntary dissolution, one partner may agree that the partnership property shall belong to his copartner. When such an agreement is made in good faith the property will be held by the partner to whom it has been transferred free from any lien or equity in favor of partnership creditors.

Assuming, therefore, as we are authorized to do, that the transfer by Eagle to Hazard, of his interest in the partnership property, was made in good faith, it vested in Hazard the partnership property, as his private estate, free from any lien or equity in favor of the partnership creditors. The doctrine of the case of *Wilson* v. *Robertson* (21 N. Y., 587), has no application to the case at bar. Here, there has been no appropriation of partnership property to the payment of the individual debts of one of the partners, and it is unobjectionable, as in the present instance, that individual property has been appropriated to the payment of partnership debts. It certainly does not become those who are the beneficiaries under such an appropriation to complain of it. Upon the facts developed in this case, the creditors of the copartnership are mistaken in the assumption that partnership property has been appropriated to the payment of individual debts. The disposition of this question renders an examination of the others which have been argued unnecessary.

Judgment should be affirmed.

Judgment affirmed.