I fully concur in the legal conclusions of my brother, RAPALLO, and for the reasons assigned by him.
The foundation of the right of partnership creditors to follow the firm property and subject it to the payment of the partnership debts, while the right itself is recognized and favored as well at law as in equity, is not as well understood or clearly defined as is desirable in respect to legal principles affecting so largely commercial dealings and interests.
It is said that partners have a lien on the property for the payment of the firm debts, and that creditors have a quasi
lien, and by means of this and through the lien of the partners they work out an effectual remedy against the property. (Exparte Williams, 11 Ves., 4; Story on Part., §§ 360, 361.)
Mr. Parsons says of this statement: "This theory is certainly obscure and hardly capable of being definitely stated, nor does it appear to lead in any direct or distinct way to the result for the sake of which it seems to have been constructed." (Parsons on Part., 345.)
GIBSON, C.J., in Doner v. Stauffer (1 Penn. R. [Penrose 
Watts], 198), says, that "the principle which enables the partners to pledge to each other the joint effects as a fund for the payment of the joint debts has introduced a preference in favor of joint creditors," but he differs from Chancellor KENT in the opinion that this preference is attributable to an *Page 165 
inherent equity in the creditors themselves. (3 Kent's Com., 64.) Judge GIBSON is of the opinion that such preference of joint creditors is founded on no merits of their own. The better opinion is, at this time, in accord with the views of Chancellor KENT, that the partnership debts have in equity an inherent priority of claim to be discharged from the joint property.
Although the rights and remedies of creditors against partnership property have not been very accurately defined and brought within any precise and well ascertained rule, certain general principles have been well established by judicial decisions, which, applied to the facts found by the referee, will give the creditor represented by the defendants in this action the benefit of its judgments and executions.
Upon the theory of the respondent, that the plaintiff, under her mortgages, acquired title to the corpus of the property described, and not merely a right to the share and interest of the mortgagors in the assets of the firm, which would give her the right to an accounting and to any surplus that might remain after the payment of the partnership debts and the adjustment of the partnership accounts between the several partners, the defendants were entitled to a judgment.
As clearly shown by Judge RAPALLO from the facts found by the referee, and stated as favorably for the plaintiff as the evidence would permit, the firm was insolvent, and hopelessly so, except as struggling men will hope against hope, and the transfers of the partnership property for the payment of individual debts was, therefore, a fraud upon the creditors of the firm, and void.
If the absurd theory could be established, that although the transfers or mortgages were but of the interest of the individual partners, and not of the body of the property, and therefore consistent with the rights of the partners and of the firm creditors, when the last of the individual partners made a like transfer of his individual interest to a third person, the legal effect was to change the character of all the transfers and make them effectual to convey the entire property, the *Page 166 
result would be the same, for the character of the transfer, and whether fraudulent or otherwise, must be determined by its legal effect, and if the law or peculiar circumstances give it an effect which the parties could not legally give it by their voluntary act, it follows that the transfer is illegal and void.
A conclusive answer to this suggestion, however, is that the law cannot, of itself, work out that which is illegal or fraudulent, and if the several partners could not, by their several acts, as against the creditors of the firm, appropriate their respective shares of the partnership property to the payment of their individual debts, the law will not give that effect to a transfer of their several interests in the surplus. But passing the consideration of this question, which is well disposed of in the opinion of my brother RAPALLO, a single question only will be considered, and that is as to the effect of the retirement of two of the partners, Wride and Huntington, by the transfer of their interests to another partner, Smith, after the debts were contracted with the Geneva National Bank, and before the recovery of the judgments upon which the property was seized by the defendants. That the withdrawal of two of the five partners, and a transfer of their interests to one of the three remaining partners, was a dissolution of the copartnership that had theretofore existed is not controverted; that is, although a firm, composed of a part of the members of the old firm, continued the business in the same name, still it was not composed of all the original members of the firm, and therefore, strictly, the old partnership was dissolved and superseded by the new organization. But the dissolution had respect to the future and not to the past. Past transactions and existing liabilities, and the relative rights and obligations of the several partners, or the rights of creditors, in respect to past transactions and dealings, were not affected by the mere act of dissolution resulting from such withdrawal of the two and the assignment of their interest aside from any conventional arrangement between the partners, or between them and their *Page 167 
creditors, by which their respective and relative rights might be changed. The partners all continued liable in solido for the debts due by the firm, and all the joint property continued liable for the joint debts as it was before.
HEATH, J., says, in Wood v. Braddick (1 Taunt., 104), "when a partnership is dissolved it is not dissolved with regard to things past, but only with regard to things future. With regard to things past, the partnership continues and always must continue;" and Lord MANSFIELD, Ch. J., in same case says, "the powers of partners with respect to rights created pending the partnership remain after the dissolution;" and see Parsons on Partnership, 386, 396.
From the time of the withdrawal of the two partners their power to act for or represent the continuing members of the firm in new transactions ceased, and perhaps they relinquished their right to contract or deal with the joint property as they might have done in concurrence with the other partners, had the partnership been closed, and the business settled up, instead of being continued with a change in its membership. It is said also that one partner selling his interest to a copartner, who assumes his share of the partnership debts, does not, in the absence of a stipulation to that effect, have any lien, equitable or otherwise, upon the firm property, for the payment of the joint debts for which he still remains liable. (Dimon v. Hazard, 32 N.Y., 65.) This must be so when new rights have attached by reason of such change of interests, as where the transfer is to a sole partner, who becomes thereby the individual owner of the property, and rights of individual creditors have accrued as in Howe v. Lawrence
(9 Cush., 553), and Robb v. Mudge (14 Gray, 534), or where the new firm which has resulted from the change of interests have exercised the jus disponendi which they have over the property, or there are creditors of the new firm who have the quasi lien recognized by the law. But I see no reason why, so long as the retiring partner remains liable with the others for the joint debts, and no adverse or paramount rights or liens have attached to the joint property, the same equity *Page 168 
should not be recognized as existing in him to have the joint property subjected to the payment of the joint debts that he would have had as a continuing partner.
But whatever may be the rights and equities of Wride and Huntington, the retiring partners, the equities of the continuing partners, especially those of Rubert and Goodwin, were not impaired or affected by the transfer of interests by Wride and Huntington to Smith, the other partner. By those transfers Smith only acquired the same interest in the property of the firm that any other transferree would have acquired, that is, a right as to the two-fifths thus purchased, to an account and to share to that extent in the surplus of the property of the firm. The fact that he was a partner does not change the character or the legal effect of the transaction. It was an arrangement between three of five partners, and they could not dispose of the corpus of the joint property to the prejudice of the other partners or the creditors of the firm, or destroy the joint interest which before existed. Smith took the transfer, subject to the rights of the other partners as to the joint property, and the share or portion of the retiring or withdrawing members. The rights of an assignee or transferree of the individual share or interest of a partner in the joint property are well settled to be but a right to an accounting, or to what shall remain after the adjustment of the partnership accounts and dealings. (Mumford v. McKay, 8 W.R., 442; Nicoll v. Mumford, 4 J.C.R., 522.)
The assignee of a partner's interest cannot withdraw his share of the joint effects. They must remain in the possession of the continuing partners for the purpose of winding up the partnership which has been dissolved by the assignment. (Horton's Appeal,
13 Penn. St. R., 67.)
Smith could no more have withdrawn the share of Wride and Huntington, to which he had succeeded, than he could have withdrawn his own original share in the joint effects of the firm without the consent of his copartners.
Although the original partnership has ceased to exist, the rights of the partners have not been impaired. The new *Page 169 
firm acquired and had the absolute power of disposal; and had the joint property been transferred by the joint act of all, the creditors of the old firm would have lost their quasi lien or their right to pursue this property unless they could impeach the transfer for fraud.
Had the firm, after the change of interests therein, incurred liabilities and contracted debts, a question would have arisen between the creditors of the old and new firms, and the creditors of the new would have been preferred. But no such question is in this case. The property of the original firm, composed of the five members, is still joint property with respect to the partners still retaining an interest in it, who are tenants in common, and the creditors of that firm to whom all the parties remain liable and through whom and whose equities and the equities of each of them they can, in the language of the books, work out their rights.
Judge STORY says: "In case of a dissolution each partner holds the joint property clothed with a trust to apply it to the payment of the joint debts, and subject thereto to be distributed among the partners according to their respective shares therein." (Story on Part., § 360.) Here the three partners composing the new firm, as partners and tenants in common, held this property clothed with this trust, and neither could withdraw any part of it nor do any act to impair this trust. All must unite in order to give effect and validity to any disposal of the property, except in execution of the trust or in the ordinary course of business. A transfer in payment or security of an individual debt of one is not such an act, and does not impair the trust or affect the rights of the other tenants in common or partners, or creditors having claims to be enforced through their equities. It is only when the rights of partners as such with respect to the joint property are gone that the quasi lien of creditors is destroyed. While this right of creditors is spoken of as in the nature of a lien, or a quasi lien, and depending to a great extent upon the equities of partners inter se, it is to be enforced against the joint effects of the partners by a common-law action and *Page 170 
common-law remedies, except where the dissolution is by the death or bankruptcy of one of the partners. (Story on Part., § 361.)
The parties who claim to have acquired severally, by transfer from the individual partners, the respective shares of such partners, each having only the right which the law gives the assignee of the share of a single partner, if they have in any way obtained possession of the property itself, must hold it clothed with the trust which would have attached to it in the possession of the partners, their assignors, and as to thecorpus of the property it remains the joint property of the firm, and liable to be seized for its debts. There has been no distribution of the property among the partners, and it has not been transferred by them as partners by any joint act, or by the act of one in the name of all, and no creditors of the later firm assert any claim to it. So long as the property continues, the firm creditors may assert their priority of right to it as against the creditors or transferrees of individual partners. (Allen v. Center Valley Co., 21 Conn., 130; 2 Story Eq. Jur., § 1253.) It is joint quoad the partners and the firm creditors so long as any one of the partners may insist upon the partnership claims to it. (Crawshay v. Collins, 15 Vesey, 237; Peacock v. Peacock, 16 id., 57.) Here neither the partners, nor any one claiming as creditors of or under title derived from the firm, assert any claim to the property adverse to the defendants. Had a stranger to the first firm come into the second, in the place of the retiring members, a different question would have arisen. But here the continuing members of the firm are all liable for the debts of the old firm; and as successors of that firm have possession and ownership of its property, primarily chargeable with the payment of its debts, and there is no foundation in principle for the claim that each of the partners can transfer his share subject only to the claims that may exist growing out of the new relations of the partners consequent on the withdrawal of the two retiring members, and this must be established to entitle the plaintiff to hold her judgment. If Rubert and Goodwin could *Page 171 
only assert a lien for the liabilities of the three as a firm incurred after Smith acquired the additional two-fifth interests from Wride and Huntington, then the plaintiff has a good title to the undivided share and portion of the corpus of the estate for which she has been permitted to recover in the court below, otherwise not.
We are cited to several cases, of which Ex parte Ruffin (6 Vesey, 119) is the pioneer, as showing that, upon the dissolution of a partnership by the retiring of one, the creditors of the firm lose all power to enforce the payment of their debts from the joint property. But such is not the effect of the decisions, nor can such a principle be deduced from them. They are entirely consistent with the views now taken of the rights of the parties to this action. Ex parte Ruffin was the case of a dissolution of partnership between two, one retiring and assigning the partnership property to the other, who continued the trade and became bankrupt. It was decided, and could not well have been decided otherwise, that by the dissolution and transfer the property became the individual property of the bankrupt, and liable to his individual debts in priority to the debts of the former partnership. The retiring partner gave to the bankrupt the entire property, with the absolute right of disposal, and the Lord Chancellor held that joint debts could not be proved against the individual estate. The like question presented in Dimon v.Hazard (32 N.Y., 65); Horton's Appeal (supra); and Robb
v. Mudge (14 Gray, 534) received the same solution. The same principle was applied in Smith v. Howard (20 How., 121); andBaker's Appeal (21 Penn. St. R., 76).
The only difference in the several cases was circumstantial and did not call for the application of any other or different rule. The decisions all stand upon the same reasons. In the last two cases the retiring partner transferred his interest to several partners who continued the business, and it was held that the firm creditors had no such lien upon the property as would prevent the disposal of the property by the joint act of those who had become the owners or deprive the *Page 172 
creditors of the new firm of a priority. Smith v. Howard
sustained an assignment by the two partners, to whom the other partner had transferred his interest for the benefit of creditors, in which a note indorsed by a third person as their security and given to the retiring partner in payment for his interest was preferred. In Baker's Appeal a like assignment by the continuing partners, preferring the debts of the new firm, was sustained. These cases are clearly distinguishable from this. If the partners who had acquired the joint right to dispose of the property had exercised it without fraud, and as the creditors of the first or former firm had no specific liens, they could not, in the absence of any fraud, have impeached the transfer.
Judge GIBSON, in Doner v. Stauffer (supra), intimates an opinion upon a theoretical case adverse to the views now taken. While restricting the purchaser of the share of a single partner to what might remain after payment of the partnership debts, he says: "A curious question might arise whether separate purchasers of the shares respectively would stand in the relation of partners so as to enable the joint creditors to follow the goods," and intimates an opinion in the negative, but the question was not in the case. To me it seems illogical, the premises being granted, that a sale by a partner, or upon an execution against him for an individual debt, carries only a right to what may remain after the payment of the partnership debts, thus affirming the right of partnership creditors to a priority of payment and a quasi lien on the joint effects, to declare that such preference is destroyed and right lost by distinct, independent transfers of the individual interests of the several partners, and that while each partner, or the creditor of each individual partner, can only have dominion or acquire a title to the surplus; when each has exercised this right or the individual creditors of all have seized and sold this right to the surplus, the rights of each are at once enlarged by relation, as of the time of the first transfer of interest of any one of the partners to the *Page 173 
destruction of the acknowledged rights of the partners inter se
and of the joint creditors.
In Brinkerhoff v. Marvin (5 J.C.R., 320), separate and successive judgments against individual partners for a single partnership debt were held entitled to be paid from the partnership funds, the chancellor giving the same effect to the two judgments as if they had been consolidated in a joint judgment against both the partners.
This is, so far as reported decisions have come under my observation, a case of the first impression; but by the application of well-established principles, and carrying to their legitimate and logical results the doctrines fairly deducible from authoritative adjudications, and giving proper effect to the recognized rights and equities of partnership creditors, as now understood, the plaintiff did not acquire a valid title to the partnership effects or to any part or undivided share or portion thereof, so as to give her a property in the corpus of the goods and effects as against the judgment and execution creditors of the firm.
The judgment should be reversed and a new trial granted.
All concur in both opinions.
FOLGER and ANDREWS, JJ., not sitting.
Judgment reversed.