THOMAS H. B. CRANE, as Assignee of ELI VAN BROCKLIN, etc., Respondent, *v.* ISAAC A. ROOSA, as Sheriff, etc., Appellant.

*General assignment — individual creditors preferred to firm creditors — validity of a sale, by one partner to his copartner, of an interest in an insolvent firm.*

In October, 1884, one Johnson, who was carrying on business, sold a half interest therein to one Van Brocklin for $500. These parties then carried on business as partners until January 3, 1885, when Johnson sold his entire interest for $500 to Van Brocklin, who assumed the liabilities of the firm and carried on the business until February 3, 1885, when he made a general assignment to the plaintiff containing preferences. In the second class of preferences were two notes

for $500, given for money borrowed to pay Johnson for the two purchases of his interest in the business.

The defendant, a sheriff, attached and took the property under an attachment issued in an action, brought by a firm creditor on February 16, 1885, in which a judgment was recovered on March 9, 1885. The defendant claimed that the assignment was void for the reason that when Johnson sold to Van Brocklin the firm was insolvent, and that Van Brocklin had no right to prefer individual to firm creditors in the assignment.

The court charged the jury that if the object of the sale was to put the property in the possession of Van Brocklin so that he might pay his individual debts the assignment was void, and refused to charge that if the firm was insolvent at the time of sale, and was known to be so by Van Brocklin, and so continued till the assignment, then the assignment was void.

*Held,* that the charge and refusal to charge were proper. (LANDON, J. dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered in Montgomery county upon the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

Albert Johnson was carrying on business in October, 1884. At that time Eli Van Brocklin purchased a half interest in the business, paying therefor $500. They carried on business under the name of Johnson & Van Brocklin till January 3, 1885, when Johnson sold out to Van Brocklin for $500, and Van Brocklin assumed the liabilities and continued the business. February 3, 1885, Van Brocklin made a general assignment to plaintiff. He prefers creditors as follows: First. Wages, etc. ; second. Six notes, one of $500, being in fact for the money borrowed October, 1884, to buy one-half of the business; another of $500, being in fact for the money borrowed to buy out the other half of the business, the total being $2,350; third. Van Brocklin's notes and indebtedness to Horace B. Claflin & Co., about $1,600; lastly. All debts.

February 16, 1885, Horace B. Claflin & Co. commenced an action against Johnson & Van Brocklin, on their aforesaid claim, and obtained an attachment. By virtue of the attachment the defendant levied and took the property. Judgment was perfected in favor of Horace B. Claflin & Co., in their action simply for goods sold March 9, 1885. The plaintiff in this action sued in replevin April, 1885. On this trial the jury found that the assignment was not made with intent to defraud. The principal ground of objec-

tion urged by the defendant on this appeal is that when Johnson sold out to Van Brocklin the firm was insolvent; that Van Brocklin had no right to prefer his individual creditors over the creditors of Johnson & Van Brocklin, in the assignment.

The court submitted to the jury the question whether the object of the sale by Johnson to Van Brocklin was to put the property in his possession so that he might pay his individual debts, and charged in substance that if such was the object the transaction was fraudulent. The defendant requested a charge that if the firm was insolvent at the time of sale, and known to be so by Van Brocklin, and so continued till the assignment, then the assignment was fraudulent. The court declined to charge, except as above stated.

*Z. S. Westbrook,* for the appellant.

*Stover & Nisbet,* for the respondent.

LEARNED, P. J.:

If a man carrying on business as a merchant becomes insolvent and makes an assignment for the benefit of creditors, there is not, so far as I know, any rule which requires him to provide that his business creditors should be paid out of the property used in his business and other creditors should be paid out of other property. But if two men are carrying on such business as partners, a contrary rule has grown up. For as A does not owe B's individual debt, it is held to be fraudulent as against the creditors of A and B to assign property which belongs to both as partners to secure B's debts. (*Wilson* v. *Robertson,* 21 N. Y., 587.) But one partner may sell out to the other, and if that other partner agrees to pay the debts, the partner who goes out may have an equity in seeing that the partnership property is applied to those debts, to relieve himself. And "the equities of creditors are to be worked out through the medium of that of the partner." (Story's Part., §§ 360, 361, 358.) Yet where a partner transferred his interest to his partner and the latter received the assets, continued the business, and two months later failed and made an assignment preferring individual debts, the assignment was held to be valid, the trial court having found that the sale was *bona fide.* The sale made the property of the firm the individual property of

the continuing partner, and he could lawfully assign it in payment of individual debts. (*Dimon* v. *Hazard*, 32 N. Y., 65.) This is the doctrine of Collyer's Partnership (§ 894); *Ex parte Ruffin* (6 Ves. [Sumner's ed.], 119, note 8); *Howe* v. *Lawrence* (9 Cush., 553), where the court say that the *bona fides* of the transaction is the only test by which to determine the rights of the joint creditors to have property, which has been transferred on dissolution to an individual member, applied to joint debts. The same doctrine is in *Robb* v. *Mudge* (14 Gray, 544), and, in the Court of Appeals, *Stanton* v. *Westover* (23 Weekly Dig., 12). But the defendant insists that if the firm of Johnson & Van Brocklin was insolvent at the time of the sale, and was known to Van Brocklin so to be, and continued to be insolvent till the assignment, then the assignment was fraudulent.

Now, it is evident that the validity and effect of the sale must depend on the state of affairs at the time and not on what happened afterwards. Whether, therefore, the firm continued insolvent (or, more accurately, whether the assets continued insufficient) until the assignment cannot affect the question whether the transfer by Johnson to Van Brocklin, when made, did or did not have the effect to make the property of the firm the individual property of Van Brocklin. So that the defendant's position must be, that when a firm is insolvent one partner cannot sell out to the other, who knows of such insolvency, with the effect of making the property the individual property of the continuing partner, even though the transaction was made in good faith. And this is not exactly the case of selling out to an insolvent or irresponsible partner, nor is it the case of selling out in order that the purchaser may pay individual debts. The court charged that *that* would be fraudulent.

It may be that when a partnership is insolvent, one of the partners may believe that by buying out the others, and thus perhaps lessening expenses, he may be able to carry the business through successfully. Now, if this is done in good faith, we cannot say that it is a fraudulent transaction. Yet, in order that the partner may do this successfully, it is necessary that the property shall become his own. If the defendant's contention is sound, a partner could, practically, never make such an arrangement.

But we may notice that in this present case Van Brocklin paid

Johnson $500 for hisshare and subsequently paid some $800 on the indebtedness of the firm, part thereof to the very plaintiffs in the attachment action, showing thus that the transaction might benefit the creditors. The defendant cites *Calkin* v. *Conner* (18 Weekly Dig., 24), but, on looking at that case, it will be seen that there was no question of fraud in the case, and the court submitted to the jury only the question of the value of the property. That was undoubtedly incorrect; and that was not the course of the trial court in this case.

The defendant also cites *Menagh* v. *Whitwell* (52 N. Y., 146). Now if we examine that case to discover what is actually decided, we shall see that several of the transactions were sales or mortgages by individual partners of their respective interests in the partnership property to strangers. In two instances two individual partners severally sold out to the remaining three. And in those cases the opinion recognizes the doctrine of *Ex parte Ruffin* and other cases above cited. (See pp. 160, 167.) And this case is noticed and distinguished in *Stanton* v. *Westover* (*ut supra*).

We are of the opinion, therefore, that the court was right in submitting to the jury the question of *bona fides*, and that there was no error in his refusals. Nor do we see any error in the refusal to charge as to delivery and change of possession. The matter had been sufficiently explained by the court in the charge. Some objections to the admission of evidence are mentioned. We have examined them and find nothing which is ground of error. The defendant urges that the verdict was against the weight of evidence. But if we are correct in our view of the law there was certainly evidence on the question of *bona fides* sufficient to justify the verdict.

The judgment and order are affirmed, with costs.

BOCKES, J., concurred.

LANDON, J.:

I dissent. The facts clearly appeared, and were not disputed, that when Johnson assigned to Van Brocklin the firm was insolvent and Van Brocklin also. Under these circumstances one partner could not, by selling to the other, divest the equitable lien of the firm creditors upon the firm property, nor could the purchasing partner, by making a general assignment, give to his individual creditors a preferred lien upon the firm property over the equitable

lien of the firm creditors. (*Stanton* v. *Westover*, 101 N. Y., 265; *Menagh* v. *Whitwell*, 52 id., 146.) The defendant was entitled to have a verdict directed in his favor.

But if the case rested solely upon the good faith of the purchasing partner, the verdict should be set aside as against the clear weight of the evidence. This partner was insolvent when he came into the firm. He first bought his equal share in the business and property by giving his note, and then the whole property by giving another note, neither of which he had the means to pay or secure, except by the scheme, which he adopted, of buying out the whole property, with full notice of the firm's indebtedness, and then pledging and assigning it to secure these and his other individual debts in preference over the firm debts. He must have known when he purchased the firm property that it was utterly inadequate to protect both classes of debts, and he promptly applied it to protect his relatives, who were his individual creditors. He should be held to have intended to do what he did do. It is true he made some payment to Claflin & Co. after he purchased from Johnson, but it does not appear that this payment exceeded the price of the goods they forwarded him after such purchase. He claims that he was duped by Johnson, but if so, what title that gave him to exact reprisals from Claflin & Co. is not apparent.

Judgment and order affirmed, with costs.